**V. U. CLOER and Karma Cloer, husband and wife, Plaintiffs in Error,**

v.

**William GILLESPIE, Defendant in Error.**

**No. 40115.**

Supreme Court of Oklahoma.

Sept. 17, 1963.

As Corrected Nov. 18, 1963.

Rehearing Denied Nov. 19, 1963.

· Philip K. Blough, Tulsa, for plaintiffs in error.

Crowe, Thieman & Froeb, Tulsa, for defendant in error.

## PER CURIAM.

Upon petition of the plaintiffs presented on the 11th day of October, 1961, the district court of Tulsa County temporarily enjoined the defendant from repairing any automobiles in his driveway; from parking more than one automobile in his driveway; from permitting oil and gas from the driveway to run onto plaintiffs' property; and from using obscene language on the premises.

The plaintiffs in their petition prayed for a temporary injunction and a permanent injunction restraining defendant from maintaining said nuisance for causes reflected by the temporary injunction.

The issues were joined by the answer of the defendant denying generally and ·specifically the allegations of the petition. At the close of the hearing the trial court denied a permanent injunction.

The parties are next door neighbors in a small home residential district in the City of Tulsa.

Jackson R. Jones, first witness for the plaintiffs testified that he was a private investigator, licensed by the City of Tulsa and bonded by Mid-Continent Casualty Company; that he had been engaged in that business for about ten years. He stated,

in substance, at the request of Mr. Cloer, he went to Mr. Cloer's home on the 29th of September, 1961, arrived there about 5:10 in the afternoon and stayed until about 10:15 that night. He further testified that when he arrived at plaintiffs' home there were four white males in the back yard of defendant's residence working on a Porche sports car; that at the time there was also an older model Cadillac and two small sports cars on defendant's driveway; that the young men were talking rather loudly and were hammering on steel and some profane and vulgar language could be heard from plaintiffs' bedroom window.

Plaintiffs' witness, Dollins, testified that he was a licensed and bonded investigator employed by Bays Detective Agency; that he went to the home of plaintiffs on October 29, 1961, arriving at 7:30 P.M. and leaving at 9:38 P.M.; that during the time he was there the driveway of defendant was being washed down by a boy and that the plaintiffs requested him "not to wash that stuff on my yard." This witness did not know whether the substance used in washing off the driveway was anything other than water. This witness further testified that there was a light in defendant's back yard. Witness did not testify that he heard any loud or profane language.

Plaintiffs' witnesses, Mason and Tate, an employee of the Oklahoma Testing Laboratories and a landscape architect, respectively, testified, in substance, that the washing from defendant's driveway created an oily color line and that this substance would not kill but could damage plaintiffs' trees and cause failure of grass to grow.

The testimony of plaintiff, Mr. Cloer, covers about 60 pages of the case-made the substance of which is that living in their home under the conditions caused by defendant was "just like trying to live in a pit at a race track;" that defendant maintained service and repair on various types of vehicles and that defendant ran test engines at times and that one time he let one engine run without a muffler for over an hour; that the work on cars in defendant's yard created a lot of noise and that this condition occurred any time of day or night; that defendant's friends used defendant's back yard and facilities to work on their cars and that gas fumes from these cars entered plaintiffs' home; that defendant and his friends tried to aggravate plaintiffs; that defendant's yard was created into a general junk yard; that the testimony of the plaintiff was all to the general proposition that the conditions prevailing in defendant's yard created a nuisance.

The testimony of the defendant in effect was a denial of the evidence of the witnesses for the plaintiffs to the extent there were no damages to the trees or grass caused by water polluted with oil running off the driveway of defendant, and that the manner in which cars were worked on in his driveway was not offensive or disturbing to the plaintiffs, either by noise or odor. Also that he did not get along very well with Mr. Cloer; that Mr. Cloer had defendant arrested for discharging a pistol loaded with blanks which he was to use in a performance in the 1957 Centennial Celebration, and that the trial judge dismissed the case.

A number of close neighbors testified on behalf of defendant. These witnesses testified, in substance, that the defendant had lived in the neighborhood for many years before plaintiffs became residents of their neighborhood; that defendant was a highly respected neighbor and neither his home nor yard was conducted as a nuisance; that the plaintiffs were hard to get along with; that they were eccentric and disliked everything in the neighborhood; that plaintiffs were disagreeable and trouble makers.

The sole question to be decided is whether the court erred in refusing to grant plaintiffs the injunction as prayed for.

The general rule applicable to such cases is found at Vol. 29, Am.Jur., p. 297, Sec. 16:

"Generally a person has a right to use his own property for any lawful

purpose, provided he does not thereby deprive others of any right of enjoyment of their property which is recognized and protected by law and his use is not such a one as the law will pronounce a nuisance. For annoyance and injury are merely consequential on the legitimate use of the property, the law of nuisance furnishes no redress, and the injury is damnum absque injuria."

Vol. 28 Am.Jur. p. 528, Injunctions, Sec. 35, defines the court's power with respect to granting injunctive relief:

"Courts of equity exercise discretionary power in the granting or withholding of their extraordinary remedies, and this is particularly true in a case where injunctive relief is sought. * * * The relief is not given as a matter of course for any and every act done or threatened to the person or property of another; its granting rests in the sound discretion of the court to be exercised in accordance with well settled equitable principles and in the light of all of the facts and circumstances in the case. * * *"

This rule is stated in the cases of Cunningham v. Ponca City, 27 Okl. 858, 113 P. 919; Bourland v. Langsford, 36 Okl. 278, 128 P. 240; and Bradham v. Johnson, 195 Okl. 275, 156 P.2d 806, as follows:

"The dissolution of an injunction, like the granting of it, is largely a matter of judicial discretion, to be determined by the facts of each particular case; and except in cases of palpable abuse of such discretion, or a clear showing of error on the part of the trial court, the reviewing court will not interfere with or in any manner control this discretion."

There is a sharp conflict in the evidence of the plaintiffs and the evidence of the defendant which was settled by the judgment of the trial court. The trial court in addition to a consideration of all the oral evidence, viewed a lot of pictures taken of the premises, taken at different times by both the plaintiffs and the defendant showing the yard of both parties, trees, grass and cars on the driveway.

 We find and hold under the facts and circumstances, considered as a whole, that the trial court did not abuse its judicial discretion in refusing to grant the injunction. There is no clear showing of error on the part of the trial court.

Affirmed.

WILLIAMS, J., dissents.

The court acknowledges the aid of Supernumerary Judge, N. S. CORN, in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.