## WARK v. ERVIN PRESS CORPORATION.

### No. 4492.

Circuit Court of Appeals, Seventh Circuit.

March 20, 1931.

J. Robert Cohler and Samuel E. Hirsch, both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

In this case bill and answer were filed, and, on motion of plaintiff for a decree pro confesso, decree was entered accordingly.

The bill charged that the plaintiff had established a business of creating, manufacturing, and selling an advertising service for those engaged in the business of dry cleaning; that plaintiff had customers and business in all parts of the country; that in December, 1927, appellant, Wark, entered plaintiff's employ as a traveling sales manager at $85 a week, remaining in such capacity until March, 1929, when the employment ended; that after about six months he re-entered plaintiff's employ as its special sales executive, under written agreement for service from September 1, 1929, to December 31, 1930, at $150 a week.

The sixth paragraph of the agreement (set out in the margin[1]) provides, in substance, that if, with or without cause, the agreement shall terminate, Wark will not thereafter reveal any of the employer's trade secrets, nor enter into nor be connected with any other business which sells or supplies advertising material for dry cleaners, and that he will not, for a period of five years from

Irving Breakstone, of Chicago, Ill., for appellant.

[1] "Sixth: Upon the termination of this agreement or of any modification, renewal or extension thereof, whether such termination takes place in accordance with the provisions of this agreement or for any reason whatsoever, whether with or without cause, the Employee agrees that he will not thereafter reveal the business methods of the Employer or any of the business secrets of the Employer to any one at any time and that he will not practice or make use of them himself, nor will he enter into, engage in, or be connected with any business selling, leasing or supplying advertising, advertising materials or advertising or display services in any form to dry cleaners or men's or women's wearing apparel stores, or to any one connected with the dry cleaning industry or with men's or women's wearing apparel stores, either directly or indirectly, in his own behalf or for any person, persons, firm or corporation; and the Employee further agrees that he will not go into, or engage in, the dry cleaning business or be employed in any capacity by any person, persons, firm or corporation; and the Employee further agrees that he will not go into, or engage in, the dry cleaning business or be employed in any capacity by any person, firm or corporation engaged in the dry cleaning business, or by any association of dry cleaners, for a period of five years from the date of such termination, any where in the United States, except that he may work for dry cleaners or men's or women's wearing apparel stores and may sell advertising, advertising materials or advertising service to dry cleaners or men's or women's wearing apparel stores, in the States of New Mexico, Arizona, Montana, North Dakota, South Dakota and Delaware."

cessation of the employment, engage in the dry cleaning business or be employed in any capacity by any person or corporation engaged in the dry cleaning business, except in the states of New Mexico, Arizona, Montana, North and South Dakota, and Delaware.

The bill further charges that Wark, through his employment and contact with the trade, became acquainted with the plaintiff's business methods and customers in various parts of the United States through personal calls upon the customers and through meeting them at conventions of the dry cleaning industry, and that on or about January 30, 1930, Wark left plaintiff's employ, and in February entered the service of C. E. Falls Service Company, another corporation likewise engaged in creating and selling advertising service to dry cleaners; that Wark thereupon availed himself of his knowledge of plaintiff's business and its business secrets, and of plaintiff's lists of customers and prospective customers, employing all this knowledge for the benefit of his new employer, and soliciting plaintiff's customers by personal calls and by correspondence, whereby plaintiff has been and will be greatly damaged; and that such conduct was contrary to Wark's undertaking in and by said agreement.

The bill asks for temporary and permanent injunction restraining Wark from disclosing any of the business methods or secrets of plaintiff, from remaining in the service of his new employer, or from being connected with any such business for such period of five years in the territory above specified, and from using, or enabling others to use, lists of plaintiff's customers or prospective customers.

A temporary injunction was granted restraining Wark from disclosing to his then employer, or to any other person, any of the secret business methods or other secrets of the plaintiff, and from soliciting customers or prospective customers of plaintiff whose names were obtained or made known to said Wark while in plaintiff's employ, and from in any manner using names or lists of names of customers or prospective customers of plaintiff obtained by him while in plaintiff's employ.

Answer to the bill was filed, in which it was admitted that plaintiff was engaged in the business described in the bill, and that plaintiff solicits practically all the leading dry cleaning establishments in the United States. The answer admits the execution of the written agreement, but denies that plain-

tiff disclosed to Wark any trade or business secrets and lists of customers and prospective customers, but stated that Wark made his own contacts and solicited those engaged in the dry cleaning business wholly from names obtained from trade journals and financial reports. It denies that plaintiff possessed any trade secrets or secret methods of doing business, but stated that its method of designing and producing its products was well known to all those engaged in similar business.

The answer further states that on January 30, 1930, Wark was discharged by plaintiff without cause, and that thereby he was relieved from the obligations of the contract; that he thereafter entered into the service of his then employer as sales manager, and that said employer was and is a competitor of plaintiff and likewise engaged in selling advertising service to dry cleaners, but that its service is in a far broader field, and is not confined exclusively to dry cleaners, as is that of plaintiff; that approximately only half of said employer's business is devoted to the dry cleaning trade; that Wark does not in any manner participate in designing the advertising service of his employer, nor in creating and manufacturing it; that said employer solicits the entire dry cleaning trade from its own catalogs and lists of customers, which are compiled as the result of its own efforts, and entirely independent of plaintiff or of any compilation on the subject by the plaintiff; that said employer was familiar with the entire advertising service and business methods and distribution to the trade of such product long before the time of plaintiff's employment of Wark; that Wark's services to plaintiff were not extraordinary or unique; that he has not, since employed by said employer, made use of any trade secrets or methods of plaintiff, or solicited any of plaintiff's former customers or prospective customers; and that he has not circularized any lists of customers or prospective customers of the plaintiff, or personally solicited any of them. But the answer admits that Wark has sent announcements to personal friends in the trade, advising them of his new connection and employment.

The answer further alleges that Wark's duties with plaintiff were such that they could be satisfactorily performed, and are being performed, by others, without any difficulty to plaintiff in engaging a successor equally capable, and denies that plaintiff has suffered any damage as a result of Wark's change in employer. The answer further al-

leges that paragraph 6 of the agreement is unilateral, unreasonable, unconscionable, and lacking in mutuality, both as to obligation and remedy, and therefore void.

The final decree made permanent the preliminary injunction, and further restrained the defendant, for five years from January 20, 1930, from being associated or employed by or from participating in the business of his then employer, and from being connected with, or entering or engaging in, within the United States, except the above named six states, any business of selling or supplying advertising or display service in any form to dry cleaners, and from being engaged or employed in any capacity by any association of dry cleaners.

■ Concededly the plaintiff was not entitled to any relief concerning any allegations of the bill which were sufficiently denied by the answer. The answer sufficiently denied that the plaintiff in its business possessed any trade secrets or secret methods of doing business, and that Wark had imparted to the Falls Service Company any secret information of plaintiff's business, or had given that employer any list of plaintiff's customers or information respecting plaintiff's business, and denied that plaintiff sustained any damage by reason of any of defendant's alleged acts or doings.

The preliminary injunction was limited to restraining defendant from disclosing to his new employer, or any other person in the dry cleaning industry, plaintiff's business secrets and secret business methods, and from soliciting customers or prospective customers of plaintiff whose names became known to defendant while in plaintiff's employ. Since the answer sufficiently denies that plaintiff had any trade secrets or secret methods of transacting its business whereof Wark became possessed, so much of the final decree as makes permanent that part of the preliminary injunction against making such revelations is unwarranted, and, to that extent, the final decree should in any event be modified.

■■ The answer, while denying generally the solicitation of plaintiff's customers, does not specifically deny the writing of letters, one of which the bill sets forth, or the allegation that other letters of similar nature were written by Wark to customers of the plaintiff, with whom Wark had, while in plaintiff's employ, come in business contact. The letter which the bill sets forth plainly indicates direct solicitation of this customer of plaintiff for the new employer. As to the writing of such letters, the answer admits that Wark sent announcements to personal friends of the trade, advising them of his new connection. It does not deny that such personal friends in the trade were also plaintiff's customers in the dry cleaning business as alleged, nor that the letters were, to all intents and purposes, a bid for business relations on behalf of the new employer. The answer also admits that the new employer was engaged in the business of supplying advertising matter for dry cleaners, although alleging it was advertising of a different kind. Nevertheless in its relation to dry cleaners it was in direct competition with plaintiff's advertising business.

To the extent, therefore, that the answer admits, or does not deny, material allegations of the bill, so much of the decree as is predicated upon the allegations so admitted, or not denied, must stand, if the matters are such as, if proved, would entitle plaintiff to the decree.

■ The answer alleges that there was nothing extraordinary or unique about Wark's services, and that he could be replaced without injury to his former employer, and that therefore the negative or restraining covenants of paragraph 6 of the contract are not enforceable. The trend of modern authorities is that such covenants, when reasonably limited as to time and place, and when reasonably calculated to protect the lawful business of the employer, will be enforced, even though the service is not of that unique and special nature as has often been the subject of judicial consideration. Erikson v. Hawley, 56 App. D. C. 268, 12 F.(2d) 491; Eureka Laundry Co. v. Long, 146 Wis. 205, 131 N. W. 412, 35 L. R. A. (N. S.) 119; Walker Coal & Ice Co. v. Westerman, 263 Mass. 235, 160 N. E. 801; 32 C. J. 220.

The circumstances here presented tend to indicate that Wark was considered by plaintiff to be, and he was in fact, a particularly useful and valuable employee. His experience with such business began with his first employment by plaintiff. His salary was comparatively large, but for some reason the employment ceased after somewhat over a year, and then the new contract was made at an initial salary nearly double what it had been.

The mere statement of the fact would indicate that in the course of such employment the good will of plaintiff's business was, in considerable degree, in the hands of this employee, and it was to protect the good will of

the business that paragraph 6 was made a part of the agreement.

It is true that the territorial limit of his restriction is large—all of the United States save six of the less important states—but plaintiff's trade, as well as that of the competitor, extended all over the United States, and so presumably did the business contacts of Wark, made during his employment with plaintiff. Under the circumstances, we cannot say that the territorial limit of the covenant, nor its time limit, were more than sufficient reasonably to protect plaintiff's business and good will. Harrison v. Glucose Sugar Refining Co., 116 F. 304, 58 L. R. A. 915 (C. C. A. 7th); Davis et al. v. A. Booth & Co., 131 F. 31 (C. C. A. 6th).

It is contended that the agreement is unilateral because there was no agreement to give Wark employment for any specified time, but would be effective in case from any cause, or without cause, the employment ceased. We do not think this is essential to the lawfulness of such covenant. If such a covenant were made in bad faith, with intent on the part of the employer that the employment would be only long enough to bind the employee to the covenant, and with a view only of preventing him from working elsewhere, a different situation would be presented. The facts disclosed by the pleadings do not raise a suspicion of the bona fides of the contract; and, made as it was in the view of Wark's previous employment with plaintiff, and his knowledge of its business, we can reach no other conclusion than that there was consideration for Wark's promise, and that paragraph 6 is valid and enforceable. Meurer Steel Barrell Co., Inc. v. Martin, 1 F.(2d) 687 (C. C. A. 3d); Hunt v. Stimson, 23 F.(2d) 447 (C. C. A. 6th).

The denial in the answer that Wark voluntarily quit the employment, and his allegation that without cause he was discharged by plaintiff, will not affect the merits of the controversy, unless possibly, as above suggested, the discharge was in pursuance of a fraudulent purpose on the part of the employer not to give employment to Wark, but only to prevent him from being employed by others. Under such a covenant it is not important whether the employee was discharged or voluntarily left the employment. Cali v. National Linen Service Corp., 38 F.(2d) 35 (C. C. A. 5th); New York Linen Supply Co. v. Schachter, 125 Misc. Rep. 805, 212 N. Y. S. 72.

We are of opinion that the decree should be limited to enjoining Wark for the five-year period from retaining employment with C. E. Falls Service Company, and from soliciting on behalf of said C. E. Falls Service Company, or any other person or persons directly or indirectly engaged in the business of supplying advertising service to dry cleaners, the names of any customers of plaintiff who, to Wark's knowledge, were such during the time of his employment with plaintiff, and from directly or indirectly soliciting any such customers on behalf of any person engaged in supplying advertising service to dry cleaners during the period or within the territory as specified and/or in the decree. The decree is directed to be thus modified, and thereupon to be affirmed. Each party shall pay one-half of the costs of this appeal.