## ALLEN v. ROSE PARK PHARMACY.

No. 7672. Decided November 19, 1951. (237 P. 2d 823.)

609

See 17 C. J. S., Contracts, sec. 241. Employees, restrictive covenants affecting engaging in profession by. 36 Am. Jur., Monopolies, Combinations, and etc., secs. 50 et seq.; 3 A. L. R. 2d 522.

*Harry D. Pugsley,* Salt Lake City, for appellant.

*Robert S. Richards, J. Richard Bell* and *Jacque Bell,* all of Salt Lake City, for respondent.

WOLFE, Chief Justice.

Osbourne Allen was discharged as manager and pharmacist at the defendant's drug store. This is an action for a declaratory judgment to determine the validity of the following negative covenant in the contract of employment under which Allen was employed.

"Osbourne agrees that in the event of termination of this contract for any reason, * * * he shall not directly or indirectly compete, as an employee or principal in the operation of a drug store or pharmacy *within a radius of two miles of this drug store for a period of five years thereafter.*"

The trial court found that the five year period of non-competition was reasonable as to time, but the two-mile radius was more than necessary to protect the defendant's business and was therefore an unlawful restraint of trade. The restrictive covenant was held to be unenforceable for lack of consideration, lack of mutuality of obligation and because it was an unreasonable restriction as to area.

In the fall of 1949 plaintiff, a registered pharmacist, entered into an argreement whereby he was to manage a drug store, being built by the defendant at 4th North and Oakley Streets (between 11th and 12th West) in Salt Lake City, Utah. He was to be paid a weekly salary, and also a bonus

of 10% of the net profits. The bonus was to be credited to his purchase of stock in the corporation to the extent of 25% ownership. This provision was written into the contract at plaintiff's insistence because as he testified he knew the people in that neighborhood and wanted to make this job his lifetime work. Plaintiff worked for the defendant in his off-hours for four or five weeks before he was put on the payroll, November 18, 1949. He purchased all the equipment, supplies and merchandise for the new store which opened for business December 20th. The contract of employment was executed between the parties on approximately December 28th, 1949. Plaintiff and his wife worked long hours at the store and the business soon became profitable. A daily average of 20 prescriptions were filled. Plaintiff and his wife resided close to the store in an area known as Rose Park. They had many friends and neighbors who patronized the store because of this close friendship. On the 14th day of November, 1950, defendant gave plaintiff 30 days notice of intention to terminate the employment. It appears that a son of one of the directors of the corporation was given the job as manager.

Plaintiff contends that the negative covenant was not supported by a proper consideration nor was there mutuality of obligation. He argues that if he worked for only one week, then under this contract defendant could terminate the employment, and enforce the plaintiff's promise not to compete for five years within a two-mile radius; that unless the contract provides employment for a definite period of time, there is a lack of mutuality of obligation necessary to support the negative covenant. In *Schneller* v. *Hayes*, 176 Wash. 115, 28 P. 2d 273, an optician's employee covenanted never to enter the same business in the same city upon termination of employment. The court reasoned that because the employee was already working for his employer when the covenant was executed and because the contract of employment was terminable at will, there was no mutuality of consideration. The following

passage was quoted from *Meurer Steel Barrel Co.* v. *Martin*, 3 Cir., 1 F. 2d 687, 688:

"If for any reason the promise of one party is not binding upon him, it is not a sufficient consideration for the promise of the other and the contract is void for want of consideration."

A collection of cases and quotations taken therefrom, which express this view may be found in *Ridley* v. *Krout*, 63 Wyo. 252, 267, 180 P. 2d 124, 128. In the *Meurer Steel Barrel Co.* case the court explained the doctrine of mutuality as follows:

"As an unilateral contract is not founded on mutual promises, the doctrine of mutuality of obligation is inapplicable to such a contract. It is applicable, however, to a bilateral contract containing mutual executory promises because there both parties are bound by reciprocal obligations and the promise of one is the consideration for the promise of the other. If for any reason the promise of one party is not binding upon him, it is not a sufficient consideration for the promise of the other and the contract is void for want of consideration (citing cases). The terms 'consideration' and 'mutuality of obligation' are sometimes confused. 'Consideration is essential; mutuality of obligation is not unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, mutual promises must be binding on both parties. But where there is any other onsideration for the contract, mutuality of obligation is not essential.' *Moreover, a contract does not lack mutuality merely because its terms are harsh or its obligations unequal, or because every obligation of one party is not met by an equivalent counter obligation of the other party.*" (Emphasis added.)

In *Genola Town* v. *Santaquin City*, 96 Utah 88, 80 P. 2d 930, 934, this court said:

"The development of the doctrine of mutuality as to remedy reveals that it was founded on the idea that one party should not have from equity what the other party could not have obtained had it applied. The doctrine that at the time of making of the contract there must be mutual fixed obligations is not tenable."

The argument that there is no mutuality of obligation in the instant case simply conveys the objection that the defendant's promise of employment, being terminable at will, is not sufficient consideration to sustain the negative covenant. Professor Williston states that

"no briefer definition of sufficient consideration in a bilateral contract can be given than this: Mutual promises in each of which the promisor undertakes some act or forbearance that will be, or apparently may be detrimental to the promisor or beneficial to the promisee, and neither of which is void, are sufficient consideration for one another." Williston on Contracts, Revised Edition, Volume I, § 103 F.

The defendant, Rose Park Pharmacy, agreed: to employ plaintiff as pharmacist and manager, to pay him a stipulated weekly wage of $100.00, to pay him a 10% bonus from net profits, to permit plaintiff to acquire up to 25% of its stock and to give him 30 days prior notice of intention to discharge him. On plaintiff's part, he agreed to devote his best efforts to the promotion and operation of the drug store, to perform services as pharmacist and manager, to give 60 days notice of intention to quit, to account for all funds in the event of termination and not to compete for five years within two miles of the store. It is a continuing contract of employment with an exchange of promises expressing a legal detriment and benefit to both parties, the entire agreement subject to termination by either.

Our conclusion that there is consideration for the covenant not to compete within the interdicted area for a period of five years after termination, though the contract of employment was terminable upon giving the required notice, is supported by the following authorities: *Wark* v. *Ervin Press Corp.*, 7 Cir., 48 F. 2d 152; *Wisconsin Ice & Coal Co.* v. *Lueth*, 213 Wis. 42, 250 N. W. 819; *Torrington Creamery* v. *Davenport*, 126 Conn. 515, 12 A. 2d 780; *City Ice & Fuel Co.* v. *Snell*, Mo. App., 57 S. W. 2d 440; *Smithereen Co.* v. *Renfroe*, 325 Ill. App. 229,

59 N. E. 2d 545; *Economy Grocery Store Corp.* v. *Mc-Menamy*, 290 Mass. 549, 195 N. E. 747.

The argument that there is no "mutuality of consideration" in contracts of employment of the kind here involved is often intended to raise the issue of the inequities and hardship incurred by enforcing the restriction when the term of employment was short and the parties bargaining power was unequal. Such contention is answered by the following quotation from *Wark* v. *Ervin Press Corp.*, 48 F. 2d 152, 156:

> "If such a covenant were made in bad faith, with intent on the part of the employer that the employment would be only long enough to bind the employee to the covenant, and with a view only of preventing him from working elsewhere, a different situation would be presented. The facts disclosed by the pleadings do not raise a suspicion of the bona fides of the contract; * * *."

The evidence sustains the trial court's finding that "the parties dealt in good faith". Thus, in this jurisdiction, we believe that as long as the restrictions as to time and space are reasonably necessary to the protection of the business and the hardship features of the case do not constitute equitable grounds for rescission, or call for the intervention of other rules of equitable relief, then the court is powerless to relieve a party from the effects of his contract.

Restrictive covenants are generally upheld by the courts where they are necessary for the protection of the business for the benefit of which the covenant was made and no greater restraint is imposed than is reasonably necessary to secure such protection. 9 A. L. R. 1456, 20 A. L. R. 861, 67 A. L. R. 1002, 98 A. L. R. 963, and 155 A. L. R. 652. Plaintiff contends that his services at the defendant's drug store are not of such a character as to permit acquisition of special business secrets. All prescriptions are prepared in conformance with specifications listed in United States Pharmacopoeia and National Formulary. No methods of buying, displaying or the selling

of merchandise were obtained by the plaintiff from the defendant. If the plaintiff did not acquire any trade secrets during his employment we must determine whether the covenant should be enforced to protect the good will of Rose Park Pharmacy Co. and prevent plaintiff from competing in the same neighborhood for customers who previously patronized the defendant's drug store. In *Kaumagraph Co.* v. *Stampagraph Co.,* 197 App. Div. 66, 188 N. Y. S. 678, 685, the court stated:

"Where, however, the employee brings to the employment skill previously acquired, and does not obtain, in the course of his employment, knowledge of methods and processes which are exclusively within his employer's control and right to use, it cannot be said that such a restraint is reasonably necessary to the employer's protection."

The many divergent views upon this matter may be found in the A. L. R. Annotations, heretofore referred to. See also *Ridley* v. *Krout,* supra, at page 127 of 180 P. 2d. Those jurisdictions which find restrictive covenants invalid because no trade secrets are involved, adhere to the English view, as expressed in *Herbert Morris Limited* v. *Saxelby,* 1916, 1 A. C. 688, 702. Lord Atkinson there stated that:

"He [the employer] is undoubtedly entitled to have his interest in his trade secrets protected, such as secret processes of manufacture which may be of vast value. And that protection may be secured by restraining the employee from divulging these secrets or putting them to his own use. He is also entitled not to have his old customers by solicitation or such other means enticed away from him. But freedom from all competition per se apart from both these things, however lucrative it might be to him, he is not entitled to be protected against. He must be prepared to encounter that even at the hands of a former employee."

But it is well established that covenants not to compete are upheld when connected with the sale of a business and the result does not hinge upon any trade secrets or special business skills which the vendor—covenantor may be found to possess. *Valley Mortuary* v. *Fairbanks,* 119 Utah 204, 225 P. 2d 739. For example, in

the sale of a hamburger stand, or of a gasoline service station, the good will established by the quality of service given, the competence, honesty and fair dealing displayed and the individual personality of the entrepreneur which goes into the business, is recognized as a tangible interest which may be the subject matter of a contract. If there is legal consideration given to support it, an employer is equally entitled to the good will created by his employee, as is the purchaser of an establishment which includes the good will of the business. In both cases, when the individual responsible for creating the good will and the business to which it attaches, become separated, it is necessary to preserve that good will to the business by a covenant on the part of the individual that he will not compete in an area where his personal reputation will detach the old customers from the old business. We hold that a covenant is valid which protects good will as well as trade secrets. Vice Chancellor James, quoted in the opinion of Lord Atkinson in the *Saxelby* case, supra, at page 701, states the reason for differentiation between the sale of good will and the employer-employee case as follows:

"On the other hand, public policy requires that when a man has by skill or by any other means obtained something which he wants to sell, he should be at liberty to sell it in the most advantageous way in the market; and in order to enable him to sell it advantageously in the market it is necessary that he should be able to preclude himself from entering into competition with the purchaser. In such a case the same public policy that enables him to do that does not restrain him from alienating that which he wants to alienate, and therefore enables him to enter into any stipulation however restrictive it is, provided that restriction in the judgment of the Court is not unreasonable, having regard to the subject matter of the contract."

The only justification in law, or in "public policy" which allows a person to sell good will along with a business, but not to do so when it is dealt with in and of itself, is the possible variance in the bargaining power involved in the two situations. The negotiation of employment contracts

through collective bargaining agents, has achieved a placing of the laboring and employer classes on nearer the same plane of bargaining power. In many communities a union wage scale is already established for pharmacists and druggists, and the imposition of restrictive covenants may soon be included within the scope of the negotiations. If it were shown that the employee in negotiating the terms of his contract was successful in gaining some additional consideration in return for his forbearance of competing upon termination, then the argument that the covenant was not necessary for the protection of the business would lose much of its force. This would involve a recitation in the contract that a certain sum was to be paid for the employee's services plus an additional amount for his personality, courtesy and honesty, etc., which may be contributed to the good will of the business. Then at the time of breach of the contract, an employee could not contend that a restrictive covenant is not necessary to protect only the good will of the business.

As we have shown, there is consideration for the covenant in this case. When the Rose Park Pharmacy Co. hired the plaintiff as manager at a stipulated weekly wage, it was purchasing the good will which might accrue to the business by reason of plaintiff's personal attributes. This interest is subject to ownership just the same as efficient business methods developed by them. In order to retain it after plaintiff's termination, a covenant was necessary which would prohibit him from drawing away all his close friends, but the defendant's customers, to another nearby drug store. Therefore we hold that a covenant not to compete is necessary for the protection of the good will of the business when it is shown that although the employee learns no trade secrets, he may likely draw away customers from his former employer, if he were permitted to compete nearby.

The covenant is reasonable as to space. Exhibit A is a map of Salt Lake City with a red circle drawn thereon,

having a two mile radius, and its center being the location of defendant's drug store. Rose Park is a new subdivision which has been developed in the extreme northwest part of Salt Lake City since the end of World War II. The record shows that there are nine drug stores, including the defendant's within the interdicted area. In the metropolitan Salt Lake City area, there are 90 drug stores listed in the classified advertising section of the current telephone book. No general restraint of trade is here being imposed. As shown by the map, the defendant's location is the most northwesterly drug store in Salt Lake City. If the hypothetical circle is divided into four equal parts, there are no other drug stores in three of the four quadrants. All of the competing stores within the prohibited area are in the southeast quadrant from the defendant's store. They are all between the business section of Salt Lake City and Rose Park subdivision. The circle includes the northwest fringe of the downtown business district, but a great number of drug stores in town are excluded. Thus residents of Rose Park who drive automobiles from their home into town may not purchase their drug supplies from the plaintiff at any drug store along the way. This area, so drawn, seems reasonably calculated to protect the defendant from competition by the plaintiff in view of the normal shopping habits of the public.

We think that the defendant might have made the reasonableness of the restriction more certain by prescribing a shorter period of time. But having determined that the covenant is necessary for the protection of the business and that the circle is modest in its exclusion, we do not believe that the term for five years shows such an overreaching on defendant's part that the entire covenant must fail. The trial court thought the time limitation was reasonable, although no evidence is presented in the record as to what period of time is necessary for the defendant to consolidate its good will in order to withstand

any competition which the plaintiff might then wish to offer.

It is therefore our conclusion that the restrictive covenant is valid. It is supported by consideration. No bad faith is shown in the negotiation of the contract. The covenant is necessary to protect the good will of the business and is reasonable in its restrictions as to time and area.

The judgment is reversed. Costs awarded to appellant.

McDONOUGH, CROCKETT, and HENRIOD, JJ., concur.

WADE, Justice.

I dissent. The enforcement of this contract results in very unfair treatment of the plaintiff. I do not believe that such treatment is necessary for the protection of the good will of this business.

The plaintiff entered into this employment contract with the reasonable expectation that he would be dealt with in good faith and that this employment would continue for a long time if his work was satisfactory. Otherwise, there was no point for him to spend his off time working without pay in the store before his regular work began nor for him and his wife to spend long hours and to draw on their personal friends to build up the business, nor would he be much concerned about having a provision in the contract that he should obtain a bonus which he could invest in stock of the company and thereby acquire a 25 percent interest therein. But he did sign this contract which allowed the employer to terminate his employment without fault on his part on 30 days notice, in which case he agreed not to compete with the store within a radius of two miles for a period of five years. This provision provided the means whereby his employer could take an unfair advantage of him without violating the express terms of the agreement, but if the employer deliberately planned to do this at the time the con-

tract was made, it would be a case of bad faith which I believe no court would uphold. It would be no less a hardship on plaintiff to enforce this contract even though defendant first thought of obtaining such result some time after the contract was executed.

By the terms of this contract, the restrictive provision not only eliminated competition which is in itself often considered sufficient to avoid such a provision, but it exposed plaintiff to the danger of sharp and unfair practices. Plaintiff acting in good faith under this contract by its provisions was induced to give his spare time to the store without pay before his regular employment began, and after it began he and his wife spent long hours and applied all of their personal friendship and personalities to build the good will of the store in the expectation that they would participate in the benefits derived therefrom only to receive notice of the termination of the employment in less than a year. There has never been any claim that plaintiff's work was not satisfactory. As a result of that contract, the defendant has obtained the services of a competent and conscientious manager over the crucial period of its existence, and the benefit of a good will which no doubt largely resulted from the high esteem in which he was held in that community, rather than anything the store had done aside from his connection therewith, and has been freed from any possibility that he compete with it in that territory. This because he was gullible enough to rely on them to treat him fairly. I do not think that "it is necessary for the protection of the good will of the business" for us to approve this kind of a contract. I therefore dissent.