SYSTEM CONCEPTS, INC., a Utah corporation, Plaintiff and Appellant,

v.

Shirley M. DIXON, an individual, Defendant and Respondent.

No. 18034.

Supreme Court of Utah.

Aug. 8, 1983.

John Parsons, Thomas N. Crowther, Cynthia J. Crass, Salt Lake City, for plaintiff and appellant.

Ellen Maycock, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

This interlocutory appeal arises out of an action by System Concepts, Inc. (herein-

after SCI), against the defendant Shirley M. Dixon for an injunction and for damages resulting from an alleged breach of a covenant not to compete contained in a contract of employment. SCI appeals the trial court's denial of its motion for preliminary and permanent injunctive relief, claiming that the employment contract in this action was enforceable by equitable injunctive relief, that SCI has met its burden under the governing rule,[1] and that the trial court's findings of fact, conclusions of law and order are not supported by the record.

On or about May 15, 1978, defendant commenced employment with SCI, a company engaged in the manufacture and sale of sophisticated cable television equipment. Although no written employment agreement was executed at that time, defendant was given a job title of "sales coordinator" and was assigned the duties of compiling customer lists, assisting in advertising, coordinating sales and leads and answering telephones.

In November of 1978, SCI employees were asked to sign an agreement, in connection with their employment, entitled "Proprietary Information Agreement." According to SCI officials, the purpose of this agreement was to protect the company's goodwill and to prevent competitors from acquiring, appropriating or discovering the distinctive characteristics and design features of the company's products and to maintain and protect the competitive advantage of its products in the industry. Among the restrictive provisions of this agreement was an anticompetition covenant which prohibited employees from rendering certain types of services to competitors (defined in the agreement as "Conflicting Organizations") within two years from the date of termination of their employment with SCI. The agreement further provided that in the event of a breach by the employee, SCI's rights under the agreement would be enforceable by injunction. Defendant signed this agreement on January 11, 1979 (some two months after receiving it), in consideration of her continued employment with SCI.

During the month of December (1978), prior to her execution of the agreement, defendant was promoted to national sales manager and given a substantial raise. Over the course of her employment and in her capacity as national sales manager, defendant became knowledgeable and familiar with SCI's products, sales methods and customers. She was also involved, somewhat, in the operational design specifications and technical development of a number of SCI's products, and had access to proprietary information. Her name, picture and role as national sales manager were promoted extensively in various advertising media, in conjunction with the company's products.

In March of 1981, defendant voluntarily terminated her employment with SCI. Shortly thereafter, notwithstanding the terms of the agreement, she accepted employment with MetroData, a competitor of SCI in the production of cable television equipment. Defendant's job title with MetroData was and is national sales manager, just as it was with SCI. Inasmuch as the field of prospective clientele for cable television equipment, such as is manufactured and marketed by SCI and MetroData, is somewhat limited due to the infancy of the industry, defendant must contact the same customers as a representative of MetroData as she did as an agent for SCI.[2]

SCI commenced this action against both defendant and MetroData in July of 1981, in an effort to have their employment relationship enjoined and to recover such damages as had been and would be incurred as a result of defendant's breach of the agreement and MetroData's interference therewith. As to MetroData, the action was dismissed upon motion for lack of jurisdiction, and no appeal was taken.

---

1. Utah R.Civ.P. 65A(e).

2. The current market for the cable television industry covers the continental United States, Alaska and Hawaii and consists of approximately 2,500 potential customers.

Prior to effecting service of process, SCI obtained two consecutive temporary restraining orders against defendant's employment with MetroData. Following service of process, SCI moved the court for a preliminary injunction. A hearing was then held upon the motion, which resulted in a denial of relief. Thereupon, SCI brought this interlocutory appeal.

 The fundamental issue on appeal is the propriety of injunctive relief under the above-stated circumstances. Injunction, being an extraordinary remedy, should not be lightly granted,[3] and it is well settled that:

> The granting or refusing of injunction rests to some extent within the sound discretion of the trial court, and its judgment ... will not be disturbed on appeal unless it can be said the court abused its discretion, or that the judgment rendered is clearly against the weight of the evidence.[4]

Furthermore, the discretion of the court should be exercised within the purview of sound equitable principles, taking into account all the facts and circumstances of the case.[5]

 The specific grounds upon which an injunction may be granted are set forth in Rule 65A(e) of the Utah Rules of Civil Procedure, which reads as follows:

> An injunction may be granted:
>
> (1) When it appears by the pleadings on file that a party is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act complained of, either for a limited period or perpetually;
>
> (2) When it appears from the pleadings or by affidavit that the commission or continuance of some act during the litigation would produce great or irreparable injury to the party seeking injunctive relief;
>
> (3) When it appears during the litigation that either party is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party respecting the subject matter of the action, and tending to render the judgment ineffectual;
>
> (4) In all other cases where an injunction would be proper in equity.

Accordingly, in order to secure injunctive relief, the moving party must show sufficient of the foregoing grounds to convince the trial court to exercise its discretion in favor of issuing the injunction.

SCI contends that the trial court's denial of injunctive relief was an abuse of discretion and clearly against the weight of the evidence. This contention rests upon SCI's allegation that the evidence adduced at the hearing below clearly established each of the three specific grounds for injunction listed in Rule 65A(e), *supra.*

 With respect to the first ground for injunctive relief (apparent entitlement to relief demanded), SCI maintains that it is not necessary to show entitlement to an absolute certainty; rather, it is enough to show probable entitlement.[6] SCI further maintains that it has shown probable entitlement to the requested relief by proving the validity and enforceability of the subject restrictive employment covenant.

To be valid and enforceable, a restrictive employment covenant must comply with the requirements set forth in *Allen v. Rose Park Pharmacy.*[7] These requirements are that: (1) the covenant be supported by con-

**3.** *Jewett v. Deerhorn Enterprises, Inc.,* 281 Or. 469, 575 P.2d 164 (1978); *Venegas v. United Farm Workers Union,* 15 Wash.App. 858, 552 P.2d 210 (1976).

**4.** *Johnson v. Ward,* Okl., 541 P.2d 182, 188 (1975). *See also Salt Lake County v. Kartchner,* Utah, 552 P.2d 136 (1976).

**5.** *Cloer v. Gillespie,* Okl., 386 P.2d 1015 (1963); *Holmes Harbor Water Co. v. Page,* 8 Wash. App. 600, 508 P.2d 628 (1973); *Anderson v. Granite School Dist.,* 17 Utah 2d 405, 413 P.2d 597 (1966).

**6.** Cited as authority for this position is: 7–Pt. 2 Moore's Federal Practice ¶¶ 65.04[1], 65.04[4].

**7.** 120 Utah 608, 237 P.2d 823 (1951).

sideration; (2) no bad faith be shown in the negotiation of the contract; (3) the covenant be necessary to protect the goodwill of the business; and (4) it be reasonable in its restrictions as to time and area.[8] SCI asserts that the covenant at issue meets all of these requirements. We agree.

The question of the adequacy of consideration for the subject covenant was resolved at the hearing below. The record reveals that the trial court specifically found SCI's offer of continued employment to be adequate consideration for the defendant's submission to the terms of the covenant.

There was neither evidence nor allegation of any bad faith in the negotiation of the Proprietary Information Agreement. Furthermore, it was defendant's voluntary termination which brought her employment relationship with SCI to a close some three years after it began.

In *Rose Park*, the plaintiff, a pharmacist, became employed by defendant and sometime thereafter executed a restrictive employment contract similar to that at issue in the present case. Upon termination of the employment relationship, plaintiff sought, by declaratory judgment, a determination of the validity and enforceability of the restrictive covenant. The Court held:

If there is legal consideration given to support it, an employer is equally entitled to the good will created by his employee, as is the purchaser of an establishment which includes the good will of the business. In both cases, when the individual responsible for creating the good will and the business to which it attaches, become separated, it is necessary to preserve that good will to the business by a covenant on the part of the individual that he will not compete in an area where his personal reputation will detach the old customers

from the old business. We hold that a covenant is valid which protects good will as well as trade secrets.

. . . .

... Therefore, we hold that a covenant not to compete is necessary for the protection of the good will of the business when it is shown that although the employee learns no trade secrets, he may likely draw away customers from his former employer, if he were permitted to compete nearby.[9]

In the present case, SCI developed its goodwill, to a substantial degree, through the defendant in her capacity as national sales manager. Under the *Rose Park* reasoning, this goodwill alone would be considered a protectible interest which SCI could justifiably secure through a restrictive covenant. More recently, however, this Court has held that to justify enforcement of a restrictive employment covenant by injunctive relief the employer must show not only goodwill, but that the services rendered by the employee were special, unique or extraordinary.[10] Again, in the present case, the record before us reflects that defendant's position as national sales manager entailed responsibilities which were special and unique in comparison to other employees with sales-related positions.[11] In light of these facts, we consider the covenant a necessary and proper vehicle for the protection of SCI's goodwill.

The final requirement under the *Rose Park* test to determine the validity of a restrictive employment covenant is that the covenant's restrictions on time and space be reasonable. The subject covenant contains a two-year time restriction, which is clearly, or at least "probably" reasona-

8. 237 P.2d at 828.

9. *Id.* 237 P.2d at 827.

10. *Robbins v. Finlay,* Utah, 645 P.2d 623, 627–28 (1982). *See also Columbia Ribbon & Carbon Manufacturing Co. v. A–1–A Corp.,* 42 N.Y.2d 496, 398 N.Y.S.2d 1004, 369 N.E.2d 4 (1977).

11. Defendant's special and unique services included management of sales activities and customer referral on a national level, extensive personal promotions in advertising media, products development and design consultation, development of sales methods and general promotion of products.

ble,[12] but does not state a specific space (geographic area) restriction. While some courts have held that an omission of the space requirement will render the covenant void,[13] we are of the opinion that such a harsh penalty is not warranted under the particular circumstances of this case.

The reasonableness of the restraints in a restrictive covenant is determined on a case-by-case basis, taking into account the particular facts and circumstances surrounding the case and the subject covenant.[14] Of primary importance in the determination of reasonableness are the location and nature of the employer's clientele.[15] In those cases which have held a restrictive covenant void for failure to include a specific territorial restriction, generally the employer's business and the potential scope of its clientele have been of a "local" nature. In one such case, the court noted:

> The enterprise was for a service activity of a local nature, that is, one generally sought and obtained by the customer locally. Unlimited territorial restriction was unnecessary and unjustifiable for plaintiff's protection and therefore unreasonable.[16]

We concur in this reasoning, but note the distinguishable circumstances and characteristics of the present case. The business being protected in this case (cable television) is not one which is sought locally by a localized clientele. Due to the recent inception of the cable television industry, the entire market for SCI's products is limited to approximately 2,500 potential customers, all of which are located within the United States. In light of the industry's inherent limitations and the nature of defendant's particular employment, it was not unreasonable for SCI to omit from the covenant a specific and explicit spacial restriction. The covenant is impliedly limited to the area in which SCI has been and is seeking its market.[17] Furthermore, the breadth of the covenant is sufficiently limited by specific activity restrictions, which, under the peculiar circumstances of this case, have greater utility and propriety than a spacial restriction.[18]

In light of the foregoing, we are compelled to agree with SCI's assertion that the facts and evidence adduced at the hearing establish the probable entitlement of SCI to the relief demanded.

▇▇▇▇ The second ground for injunctive relief (irreparable harm) is generally considered the most important.[19] If the moving party is unable to show "that the commission or continuance of some act during the litigation would produce great or irreparable injury ...,"[20] the motion for injunction will usually be denied, notwithstanding a showing of probable right or entitlement to recovery at law.[21] Irreparable injury, in the injunctive relief context, has been defined as follows:

> Wrongs of a repeated and continuing character, or which occasion damages that are estimated only by conjecture, and not by any accurate standard, are included.... "Irreparable injury" justifying an injunction is that which cannot be adequately compensated in damages or

---

12. Annot., 41 A.L.R.2d 179 (1955).

13. *See Armstrong v. Taco Time Interm.,* 30 Wash.App. 538, 635 P.2d 1114; *Pancake Realty Co. v. Harber,* 137 W.Va. 605, 73 S.E.2d 438 (1952); *H & R Block, Inc. v. Lovelace,* 208 Kan. 538, 493 P.2d 205 (1972).

14. *Pancake Realty Co. v. Harber, supra* n. 13, 73 S.E.2d at 441.

15. *See* Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625 (1960).

16. 493 P.2d at 213.

17. *Supra* n. 12.

18. Blake, *supra* n. 14.

19. 11 Wright & Miller, Federal Practice and Procedure: Civil § 2948 (1973).

20. *Supra* n. 1.

21. *See McGregor v. Silver King Mining Co.,* 14 Utah 47, 45 P. 1091, 1093 (1896).

for which damages cannot be compensable in money.[22]

Defendant contends that SCI has failed in its burden of proving irreparable harm, inasmuch as it has been unable to show that defendant, in her new employment with MetroData, has actually influenced former SCI customers to purchase MetroData products.

SCI maintains that it has carried its burden, and points out that the requirements of irreparable harm may be satisfied by merely showing a likely or actual "threatened" harm, rather than, as defendant argues, an actual or certain harm. Consistent with SCI's position, this Court has held:

> That [injunctive relief] is an *anticipatory* remedy purposed to *prevent* the perpetration of a *threatened* wrong or to compel the cessation of a *continuing* one. Furthermore, it is an instrument of equity to be invoked where the party has no adequate legal remedy. [Emphasis added; citations omitted].[23]

The Supreme Court of the State of Washington addressed this same issue in the case of *Columbia College of Music & School of Dramatic Art v. Thunberg*.[24] There, in a similar action to enjoin the violation of a covenant not to compete, the defendant, a former employee of the plaintiff music school, moved the lower court for nonsuit on the grounds that the plaintiff had failed to show that any pupils had actually left the school on account of defendant's leaving its employ and violating the restrictive employment covenant. The court held:

> To *prevent* wrong is the peculiar province of equity. His [defendant's] conduct has been such, and promises to be of such character, that damages *may* result. If so, they would be irreparable, in the sense that they could be estimated only by conjecture and not by any accurate standard. [Emphasis added.]

*Id.* 116 P. at 282.

■ It was therefore not necessary for SCI to show that defendant had actually taken its business or former customers in order to carry the burden of showing irreparable harm; rather, it was required only that SCI show the likely or threatened occurrence of such harm and the irreparability thereof.

■ To satisfy this requirement, SCI has shown that: (1) over the course of defendant's employment with SCI and in her capacity as national sales manager, she became knowledgeable and familiar with SCI's products, sales methods and customers; (2) defendant was involved in the operational design specification and technical development of a number of SCI's products and had access to proprietary information; (3) defendant's name, picture and role as national sales manager were promoted extensively in various advertising media, in conjunction with the company's products; (4) defendant's new employer, MetroData, is a direct competitor in the cable television industry with SCI; (5) defendant was and continues to be employed by MetroData as national sales manager with virtually the same duties she had with SCI; and (6) defendant, in her employment with MetroData, must contact and has contacted the same customers with comparable products as she did while employed by SCI.

The foregoing evidence is clearly sufficient to show the likely and threatened misappropriation of SCI's confidential information and goodwill by reason of defendant's employment with MetroData. It is further evident therefrom that the nature of the threatened harm is irreparable, inasmuch as the damages that may result from the misappropriation of confidential information and goodwill "could be estimated only by conjecture and not by any accurate standard."[25]

■ The third stated ground for injunctive relief, that an act is threatened or is occurring which will tend to render a final

---

22. Black's Law Dictionary 707 (rev. 5th ed. 1979).

23. *Anderson v. Granite School District,* 17 Utah 2d 405, 413 P.2d 597, 599 (1966).

24. 64 Wash. 19, 116 P. 280 (1911).

25. *Id.*

judgment ineffectual, is likewise satisfied. Any final judgment would not be able to effectively restore to SCI the benefits of its goodwill attached to defendant, or proprietary information of SCI used against and in competition with SCI during the pendency of the action.

In addition to SCI's having satisfied the requirements for injunctive relief under the applicable Rule, we note that defendant has specifically agreed and acknowledged in the agreement that injunctive relief is an appropriate remedy.

SCI further contends that the trial court's findings of fact and the evidence contained in the record do not support the trial court's order or conclusions of law. We agree.

■ The first conclusion of the trial court is stated thus:

> 1. Issuance of a preliminary injunction at this time would prohibit defendant Dixon from any employment within the industry in which she is trained, thus creating great hardship for defendant Dixon.

The trial court made no finding of fact which supports that conclusion, nor does it appear that there is any evidence in the record to support such a finding and conclusion. What the record does show is that the restrictions placed upon defendant by the subject covenant are explicitly limited to services rendered in a "Conflicting Organization" dealing in "Conflicting Products." We cannot agree that such limited restrictions prohibit employment within the entire industry, nor that they impose such great and undue hardship upon defendant.

■ The second of the trial court's conclusions reads:

> 2. The contract is a contract of adhesion and because enforcement of it would create substantial hardship to defendant Dixon, plaintiff is not entitled to the equitable remedy of a preliminary injunction.

This conclusion appears to be based upon the trial court's fourth finding of fact, which reads:

> 4. At the time defendant Dixon signed the proprietary information agreement, she was told by her employer that unless she did so, her employment would be terminated.

The record shows that defendant had the agreement in her possession for nearly two months before signing it, and that during that period of time (prior to signing the agreement), she received a raise and promotion. The record further indicates that defendant's employment with SCI was always terminable at will, and that the promise of continued employment contained in the agreement itself was determined by the trial court to be sufficient consideration therefor. In light of these facts, though it be true that the signing of the agreement was mandatory for all employees, both new and continuing, we cannot agree that it was presented in the nature of an adhesion contract, especially as to the defendant.

■ A contract is usually considered adhesive which is prepared in a standardized form and presented on a take-it-or-leave-it basis to one occupying a disadvantageous bargaining position.[26] The aforestated facts clearly do not support the finding nor the conclusion that an unconscionably disparate bargaining position existed between the defendant and SCI. The third and final conclusion of the trial court is as follows:

> 3. Plaintiff has failed to meet the standards of Rule 65A of the Utah Rules of Civil Procedure governing issuance of a preliminary injunction.

The standards of Rule 65A are not dealt with at all in the findings. For the reasons set forth in the above discussion of Rule 65A, we conclude that SCI fully complied therewith, and that the trial court's conclusion is therefore erroneous.

In light of the foregoing, we find the trial court's judgment clearly against the weight of the evidence. Therefore, we re-

---

**26.** 4 S. Williston, A Treatise on the Laws of Contracts 626 (3d ed. 1961)

verse and remand for the purpose of the entry of a preliminary injunction.

OAKS, HOWE and DURHAM, JJ., concur.

STEWART, J., dissents.