436 P.2d 794

Madeline B. HURWITZ and Bernice B. Littlefield, Plaintiffs and Respondents,

v.

DAVID K. RICHARDS COMPANY, formerly Land Investments, Defendant and Appellant, Eleanor H. Blackburn, Defendant and Respondent, and Walker Bank & Trust Company, Defendant.

No. 10956.

Supreme Court of Utah.

Jan. 24, 1968.

Strong & Hanni, and David K. Winder, Salt Lake City, for plaintiffs-respondents.

E. L. Schoenhals, Salt Lake City, for defendant-respondent Eleanor H. Blackburn.

Cannon, Greene, Piercey, Nebeker & Horsley and DeLyle H. Condie, Salt Lake City, for defendant-appellant David K. Richards Co.

Kent B. Linebaugh and Ray, Rawlings, Jones and Henderson, Salt Lake City, for defendant Walker Bank and Trust Co.

ELLETT, Justice:

On November 8, 1960, Eleanor Blackburn and her husband, as sellers, and the predecessor of David K. Richards & Company, a corporation, as buyer, entered into a written contract for the sale of 4.11 acres of land for the sum of $38,000.00, payable $1,000.00 at the time of executing the agreement, $4,000.00 on or before February 1, 1961, and $5,500.00 on or before the first day of February of each succeeding year until the balance was paid in full. It was further agreed that the purchaser was to subdivide the land, and after the first $5,000.00 was paid, the parties would set up an escrow agreement whereby warranty deeds covering each lot would be deposited with the escrow agent to be delivered to the purchaser upon his paying therefor a sum later determined to be $2,200.00 per lot.

The way this amount per lot was ascertained was as follows: There was a house which was to be on one lot, for which the purchaser agreed to pay $16,000.00. The remaining $22,000.00 was to be divided by the number of lots carved out of the remainder of the land. Ten lots in addition to the home lot were surveyed, and the $22,000.00 divided by 10 would give the $2,200.00 figure per lot. The escrow agreement was entered into on July 19, 1961, and provided that a warranty deed would be given to the purchaser for each lot sold upon the payment of $2,200.00 except that Lot 4, which contained the house, would be deeded and the sellers would vacate the house upon the payment of $16,000.00 therefor.

The purpose of the buyer in entering into the contract was to subdivide the land and sell the vacant lots. It sold those lots at prices ranging between $4,800.00 and $5,500.00 each.

According to David K. Richards, the owner of all of the stock of the corporation, he had sold all the vacant lots by the end of the year 1963. However, the escrow agent testified that the last deed was delivered to Richards in June of 1965.

Mr. Blackburn died on June 14, 1963, and Mrs. Blackburn was adjudicated an incompetent on September 30, 1963. David K. Richards in his deposition said that he notified the escrow agent when he picked up the last deed to the vacant lots that he would not pay the $16,000.00 for Lot 4, although he never did notify Mrs. Blackburn or her guardian that he did not intend to complete his contract.

It appears that Richards, having gotten all of the profits from the transaction, was

looking for an "out" from the less lucrative part of his agreement. His testimony indicates that he was relying on statements he claims were made prior to the escrow agreement to the effect that the Blackburns had changed their minds and did not want to live in an apartment but desired to remain in the house on Lot 4. He claims that this is an anticipatory breach of the contract and that he was thereby relieved from buying that lot. It will be noted that this claimed conversation occurred prior to the written escrow agreement which he signed. He also claims that upon the death of Mr. Blackburn he went to see the widow and found her crying. In his deposition he testified as follows:

A  She was all broken up at the time of his death and didn't know what she was going to do and she appeared to sound to me like I was going to maybe try to move her out of the house after they had been living there that long. So far as I was concerned, I didn't have any intent to move her out of the house.

Q  Would it be correct that at the time you suggested something in substance and effect, "Mrs. Blackburn, you don't need to woory about the house, you stay here as long as you like"?

A  I may have told her something to that effect. I felt like by now, so far as I was concerned, they had decided to stay in the house and we had a divided contract.

Q  What contract?

A  I felt my obligation under the contract to pay for the house, now after five years, was no more because they had decided to keep the house and stay in it. When our original deal was that they would move out in the spring, I was completely sold out to them.

Richards cannot claim an anticipatory breach of the escrow agreement even if theretofore the Blackburns had expressed a desire to remain in the old home. If Richards thought there was an anticipatory breach of the contract, he should have said something about it at the time. He does not claim that either Mr. Blackburn or Mrs. Blackburn said that they would not perform the contract. He only claims that they said that they had some misgivings about moving out of the old home and that Mrs. Blackburn wanted to stay in it until she died. This is not sufficient to declare an anticipatory breach.

Such a matter was before the Arizona Supreme Court in the case of Diamos v. Hirsch, 91 Ariz. 304, 372 P.2d 76, wherein at page 78 of the Pacific Reporter it is said:

We have recognized that an action may be maintained for breach of contract based upon the anticipatory repudiation by one of the parties to the contract. [Citation omitted.] It is well established that in order to constitute an anticipatory

breach of contract there must be a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render the promised performance when the time fixed for it in the contract arrives. [Citations omitted.] And as succinctly pointed out in § 319 of the Restatement of the Law of Contracts, the effect of a repudiation is nullified:

"(a) Where statements constituting such a repudiation are withdrawn by information to that effect given by the repudiator to the injured party before he has brought an action on the breach or has otherwise materially changed his position in reliance on them; * * *."

In the instant case Richards has never brought suit, nor has he changed his position in reliance on any such pretended anticipatory breach.

■ If there had been an anticipatory breach, Richards had three options available to him:

1. Treat the entire contract as broken and sue for damages.

2. Treat the contract as still binding and wait until the time arrived for its performance and at such time bring an action on the contract.

3. Rescind the contract and sue for money paid or for the value of the services or property furnished.

See 17 Am.Jur.2d, Contracts § 449.

Richards followed neither remedy available to him. He continued to recognize the contract so long as it was profitable for him to do so.

Section 451, Contracts, in 17 Am.Jur.2d states the law thusly:

It is a well-established general rule that where a party repudiates a contract before time for performance arrives, the repudiation may be withdrawn unless the other party, before the withdrawal, manifests an election to rescind the contract or materially changes his position in reliance on the repudiation. The locus poenitentiae is kept open until the injured party elects to treat the contract as abandoned by the other party and brings action as for nonperformance.

\* \* \* \* \* \*

■ The trial court granted summary judgment in favor of the plaintiffs and against the defendant Richards for the sum of $16,000.00 and interest. Richards challenges this judgment and claims that the court had nothing except the pleadings before it upon which it could base its judgment.

The court believed that the deposition of David K. Richards was before it at the time of the argument on the motion for summary judgment. Counsel for both sides had copies thereof and read excerpts therefrom to the trial judge. In fact, the judge read all of the depositions himself from one of

the copies. Later it appeared that Richards had never signed his deposition, consisting of some 45 pages, although it had been in his lawyer's office some four months awaiting his signature. At the time of hearing on the motion for summary judgment the original deposition was unsigned and in the office of counsel for Richards, and counsel knew that the deposition had not been signed and filed with the court. We do not commend this sort of imposition on the trial court and think that David K. Richards & Company should be estopped now to claim that the Richards deposition was not before the court. However, the question is moot, since counsel for plaintiffs moved for a further hearing on the motion before the court had signed any judgment thereon.

At this further hearing counsel stipulated that the testimony in the deposition was true and correct as had theretofore been quoted to the court. Thereafter the following proceedings were had:

MR. WINDER: Based on Mr. Piercey's stipulation I would ask the deposition be published, be considered by the Court and made a part of the record in this case, and I would like to attempt to introduce some other evidence very quickly, some Court files, and ask that the Court retake the matter under advisement, reread the deposition, if necessary, and if the Court wants to change his mind fine, but I would ask that the Court, before a formal judgment is entered, reconsider the matter based on the evidence being submitted here today.

MR. PIERCEY: I think that would be improper. This was not an inadvertent thing on our part. We were very aware that the deposition had not been published and was not published at the time, and, of course, it is not our obligation to plug the holes in the plaintiffs' record, and had we stipulated that it could be published after judgment, I think I would be waiving a substantial right of my client. I think the Court has already ruled on this matter. I think it is improper for the Court at this time to supplement the record, to put in different material than that which was in before the Court at the time of its ruling. I think we are entitled to test the ruling on the same basis it was put in before the Court.

Without laboring it further I will submit it on that.

On the same day of this latter hearing the court filed its memorandum decision, wherein it stated:

The files were admitted, subject to the objection of the defendant, David K. Richards Company, and the Court was of the opinion that said deposition was published at the prior hearing on motion for summary judgment. According to counsel for all parties the Court is in error, and the Court is of the opinion that said deposition should now be pub-

lished, that the files and records in cases 47301 and 145847 should be received and made a part of the record, and the summary judgment heretofore granted by minute entry be granted formally.

We think that judgment was properly entered, and the ruling of the court is affirmed, with costs to plaintiffs.

CROCKETT, C. J., and CALLISTER, TUCKETT and HENRIOD, JJ., concur.