KASCO SERVICES CORPORATION,
Plaintiff and Appellant,

v.

Larry D. BENSON and Connie
A. Benson dba Tri–B–Supply,
Defendants and Appellees.

No. 900260.

Supreme Court of Utah.

March 31, 1992.

Rehearing Denied May 1, 1992.

Michael F. Richman, David L. Arrington, Salt Lake City, for plaintiff and appellant.

Reid Tateoka, Shawn D. Turner, Salt Lake City, for defendants and appellees.

HOWE, Associate Chief Justice:

This interlocutory appeal arises out of an action by Kasco Services Corporation against defendants Larry D. Benson, his wife Connie A. Benson, and Tri–B–Supply for an injunction and damages resulting from an alleged breach of a covenant not to compete contained in an employment contract. We granted this appeal pursuant to Utah Code Ann. § 78–2–2(3)(j) and rule 5 of the Utah Rules of Appellate Procedure.

In 1982, Larry Benson was employed by Keene Corporation. They entered into an employment agreement which contained a restrictive covenant that upon termination, Benson would not compete for eighteen months. The agreement specifically provided that Benson would not

(i) call upon any Keene Customer for the purpose of soliciting, selling, renting and/or servicing Butcher Products,

(ii) directly or indirectly, solicit, divert, take away or attempt to take away any Keene Customer, or the business or patronage of any such customer for Butcher Products, or

(iii) directly or indirectly, engage in any manner in the business of the sale, rental or servicing of Butcher Products in any geographic territory in which [Larry Benson] had called upon Keene Customers during the period of his employment with Keene....

The agreement further prohibited Benson from using or disclosing confidential information. He was given confidential customer and pricing lists and was entrusted with preexisting customers. The agreement expressly stated that the parties' rights and obligations "bind and inure to the benefit of any successor or successors of Keene by ... merger...." Kasco is a successor in interest to Keene, and the rights and obligations of Keene were assigned to Kasco.

In the summer of 1988, following the merger of Keene with Kasco, employment contracts were sent to all employees including Benson. The preexisting agreements with Keene were "restated for the record." Benson refused to sign the 1988 contract and alleges that he informed Kasco in August 1988 that he considered the noncompetition covenants "null and void." He continued, however, to work for Kasco and on February 15, 1989, provided written notice that he would resign effective March 1, 1989.

Benson was one of Kasco's top five salespersons. Kasco's customers developed a pleasant, ongoing relationship with

him. In effect, Benson was Kasco in his territory, and he was responsible for the goodwill of the business because he was the only sales representative in his territory.

We have previously held that " 'a covenant not to compete is necessary for the protection of the goodwill of the business when it is shown that although the employee learns no trade secrets, he may likely draw away customers from his former employer, if he were permitted to compete nearby.' " *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 426 (Utah 1983) (quoting *Allen v. Rose Park Pharmacy*, 120 Utah 608, 617, 237 P.2d 823, 827–28 (1951)).

Shortly after terminating employment with Kasco, Benson began a butcher supply business with his wife Connie, in direct competition with Kasco. The business was called Tri–B–Supply, and they employed their son Robert. When Kasco became aware of this, it brought this action for damages and sought a preliminary injunction. The trial judge granted the injunction against Larry Benson, finding that the four requirements set forth in *Allen v. Rose Park Pharmacy*, 120 Utah at 619, 237 P.2d at 828, had been satisfied.[1] Moreover, the court determined that Kasco had also met the requirements of *Robbins v. Finlay*, 645 P.2d 623, 627–28 (Utah 1982), which held that not only must the restrictive covenant be necessary to protect the goodwill of the business, but also the employer must show that the services rendered by the employee are special, unique, or extraordinary.[2]

[1] The four requirements are that (1) the covenant not to compete must be supported by consideration; (2) no bad faith may be shown in the negotiation of the contract; (3) the covenant must be necessary to protect the goodwill of the business; and (4) the covenant must be reasonable in its restrictions in terms of time and geographic area. *Allen v. Rose Park Pharmacy*, 120 Utah at 619, 237 P.2d at 828.

[2] Although Benson has not cross-appealed and made an issue of whether the requirements of *Robbins v. Finlay* were met, the dissenting opinion raises the question and determines that they were not met because Benson was "a route salesman, pure and simple." We disagree with

The trial judge determined that the eighteen-month time period specified in the covenant began to run in August 1988, when Benson refused to sign the new employment contract and allegedly told Kasco that he would not abide by the noncompetition covenant. The judge refused to enjoin Connie and later denied Kasco's motion to amend its complaint to add Robert as a defendant. We granted an interlocutory appeal to review these rulings. During the pendency of this appeal, we enjoined Larry, Connie, and Robert Benson, along with Tri–B–Supply, from further soliciting or accepting business from Kasco's customers. The assertion in the dissenting opinion that Kasco did not timely petition for an interlocutory appeal is without merit. The April 10, 1989 order granting a preliminary injunction was not a final order, but an interlocutory order, which by its very nature was subject to modification. *See* Utah R.Civ.P. 54(b). In 1990, Kasco sought to modify the April 10, 1989 order. This appeal was timely taken from the court's refusal to do so.

## TIME FRAME OF THE COVENANT

Kasco contends that the trial court erred in holding that the eighteen months began to run in August 1988 rather than when Benson actually resigned on March 1, 1989. The trial judge reasoned:

The preliminary injunction will be granted to expire 18 months from August, 1988 because I believe at that time the company was *on notice* that Mr. Benson did not wish to retain any restrictive covenants in his employment, there-

that characterization because Finlay was a salesman who was free to sell similar products of competing manufacturers and did not return to service the products he sold. On the other hand, Benson was trained by Kasco to service and repair grinders, saws, slicers, and tenderizers manufactured and sold only by Kasco. He was entrusted with Kasco's preexisting customers and given confidential customer and pricing lists. He was given an exclusive territory to service Kasco's products and every four months called on each of Kasco's customers. Benson was like the pharmacist in *Rose Park Pharmacy*, where all the goodwill of the employer was associated with and created by the employee.

after, the company would be willing to either—required to terminate him or deal otherwise with him. At that point the restrictive covenant would be terminated as to its application to Mr. Benson except for 18 months thereafter.

(Emphasis added.)

■ The trial judge made no specific findings of fact or conclusions of law. The covenant not to compete expressly states that the eighteen-month time frame begins to run *after termination*. The trial court's finding that Kasco was "on notice" and the noncompetition covenant began to run in August 1988 involves a question of fact and a question of law. Since the finding that Kasco was on notice was a question of fact, we reverse only if we find it clearly erroneous. *See* Utah R.Civ.P. 52(a); *State v. Petersen*, 810 P.2d 421, 425 (Utah 1991). However, the effect of that notice, which presumably led the trial court to find an anticipatory repudiation, is a question of law which we review for correctness. *State v. Ramirez*, 817 P.2d 774, 781–82 n. 3 (Utah 1991); *State v. Petersen*, 810 P.2d at 425.

■ An anticipatory breach occurs when a party to an executory contract manifests a positive and unequivocal intent not to render performance when the time fixed for performance is due. *Hurwitz v. David K. Richards Co.*, 20 Utah 2d 232, 234–35, 436 P.2d 794, 796 (1968). The other party can immediately treat the anticipatory repudiation as a breach, or it can continue to treat the contract as operable and urge performance without waiving any right to sue for that repudiation. *United California Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 281, 681 P.2d 390, 433 (Ct.App.1983); *see also University Club v. Invesco Holding Corp.*, 29 Utah 2d 1, 3, 504 P.2d 29, 30 (1972).

Our court of appeals recently noted, "A party that has received a definite repudiation from the breaching party to the contract should not be penalized for its efforts to encourage the breaching party to perform its end of the bargain." *Breuer–Harrison, Inc. v. Combe*, 799 P.2d 716, 725 (Utah Ct.App.1990) (citing *United Califor-*

*nia Bank*, 140 Ariz. at 281, 681 P.2d at 433); *see also* 4 Arthur L. Corbin, *Corbin on Contracts* § 981 (1951). The opinion fully explains the "modern rule" of anticipatory breach and the outmoded common law "waiver" theory.

■ We need not decide here whether Benson's announcement that he did not intend to abide by the noncompetition covenant was an anticipatory repudiation. It makes no difference in this case. If his remarks were an anticipatory repudiation, Kasco simply had an election. It could treat the remark as a breach, or it could continue to treat the contract as operable and encourage performance without waiving any rights under the contract. If there was no anticipatory repudiation, the noncompetition covenant remained in full force. Therefore, anticipatory repudiation or not, it was error for the trial court to rule that the eighteen months began to run when Kasco was put on notice of Benson's intent not to comply with the restrictive covenant. The beginning time should have been the actual date of Benson's resignation.

### POWER TO ENJOIN DOES NOT REQUIRE PRIVITY

Kasco contends that the trial court erred by not enjoining Connie Benson. The refusal was because she was not in privity of contract with Kasco. The court believed that a direct contract was a prerequisite to injunctive relief:

> JUDGE YOUNG: ... and you [Kasco] fundamentally have no right to enforce anything as to Mrs. Benson in relation to this agreement....
>
> ....
>
> MR. RICHMAN: I would assume that this court's order is not precluding us from seeking a permanent injunction against Mrs. Benson at a later time, just a denial at this time.
>
> JUDGE YOUNG: Well, I don't see that I have any basis for having jurisdiction over her in relation to a contract at all.

■ We have previously held:

[T]he granting or refusing of injunction rests to some extent within the sound discretion of the trial court, and its judgment ... will not be disturbed on appeal unless it can be said the court abused its discretion, or that the judgment rendered is clearly against the weight of the evidence.

*System Concepts, Inc. v. Dixon,* 669 P.2d at 425 (quoting *Johnson v. Ward,* 541 P.2d 182, 188 (Okla.1975)). The trial court's discretion must be exercised consistently with sound equitable principles, "taking into account all the facts and circumstances of the case." *Id.*

■ Connie Benson is a stranger to the agreement between Kasco and Larry Benson. This court has not previously decided whether persons lacking privity may be enjoined. An Indiana decision adopted a holding from the Florida Supreme Court which held that " 'the rule that a stranger to a covenant may be enjoined from aiding and assisting the covenanter in violating his covenant is supported by an overwhelming weight of authority.' " *McCart v. H & R Block, Inc.,* 470 N.E.2d 756, 760 (Ind.Ct. App.1984); (quoting *West Shore Restaurant Corp. v. Turk,* 101 So.2d 123, 129 (Fla.1958)); *see also Chemical Fireproofing Corp. v. Bronska,* 542 S.W.2d 74, 80 (Mo.Ct.App.1976) (nonsigning spouse can be enjoined if "under the circumstances it is reasonable to enjoin a stranger to a covenant from aiding and assisting the covenantor in violating his contract or receiving any benefits therefrom"); *Arwell Division of Orkin Exterminating Co. v. Kendrick,* 131 Ill.App.2d 632, 633, 267 N.E.2d 352, 354 (1971); *Madison v. LaSene,* 44 Wash.2d 546, 559, 268 P.2d 1006, 1013 (1954); *Ingredient Technology Corp. v. Nay,* 532 F.Supp. 627, 631 (E.D.N.Y.1982).

More recently, the Nevada Supreme Court followed the reasoning of *McCart* that the "better, and, apparently, majority view allows a party not privy to a covenant not to compete to be enjoined, if that party breaches the covenant in active concert with the principal party enjoined and with

knowledge of the covenant." *Las Vegas Novelty, Inc. v. Fernandez,* 106 Nev. 113, 787 P.2d 772, 774 (1990). The court found support for its ruling in Nevada's injunction rule, which is substantially the same as our rule on injunctions, Utah Rule of Civil Procedure 65A(d). Our rule provides:

Every order granting an injunction and every restraining order ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, *and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.*

Utah R.Civ.P. 65A(d) (emphasis added).[3]

The Nevada court further added: "NRCP 65(d) is not precisely on point, because it addresses the scope of enforcement of an injunction after the injunction has been properly issued. Nevertheless, this section makes no mention of a privity requirement and provides significant support for the majority view." *Las Vegas Novelty, Inc. v. Fernandez,* 787 P.2d at 774.

We find the Nevada court's analysis to be equally applicable in our jurisdiction and therefore adopt its position that in the appropriate circumstances, a third party may be enjoined if it is shown to be aiding or assisting the covenantor in violating the noncompetition agreement and with knowledge of the covenant.

■ In the instant case, evidence was presented that Connie Benson was in fact aiding or assisting her husband in violating the noncompetition agreement. Ten days after Benson's resignation, a letter on Tri-B–Supply letterhead was sent to potential customers, many of which were Kasco customers. The letter read in part:

Dear friend,

We would like to inform you that we have started our own business....

We will be contacting you soon in hopes to supply you with your service needs.

---

**3.** Utah Rule of Civil Procedure 65A has been substantially revised effective September 1, 1991. *See* Utah R.Civ.P. 65A (Supp. Aug.1991);

*see also* Mark W. Dykes, *Injunctions Under Revised Rule of Civil Procedure 65A,* Utah B.J., Aug.–Sept. 1991, at 17.

We will be operating our [routes] on a 3 month service program in order to give you more frequent service and to provide for your needs in a more efficient manner.

Because of decreased over head costs we will be able to provide less expensive service in the future....

Thank you for your support in the past and look forward to serving you in the future.

Sincerely,

Connie A. Benson, President

Larry D. Benson, Service Rep.

It is clear that there was concerted action from the very beginning by Larry and Connie Benson. Her conduct is a good example of aiding or assisting a covenantor in violating a restrictive covenant and with knowledge of the covenant. Therefore, we conclude that it was error not to enjoin Connie Benson.

Soon after the trial court enjoined Larry Benson but refused to enjoin his wife, another letter was sent to former Kasco customers who had recently become customers of Tri–B–Supply. This letter states in part:

This is to inform you that Larry Benson has a Restraining Order against him and cannot service in the area for the period of 1 year.

However I would like to inform you that I am operating with my son Robert L. Benson, who is very capable of handling your service needs to operate our new business....

Sincerely,

Connie A. Benson

Robert L. Benson

The letter also mentioned that Robert had received training in the service and repair of grinders, saws, slicers, and tenderizers. Again, there is evidence of concerted action. Had the trial court granted Kasco's motion to add Robert as a defendant, Kasco may have been able to adduce sufficient evidence of concerted action for which an injunction would lie against him.

PROSPECTIVE INJUNCTIVE RELIEF

Kasco next contends that it is entitled to prospective injunctive relief for another six months because it was not given full opportunity to restore its goodwill. Benson was enjoined for only twelve months, and Connie and Robert were not enjoined at all. Benson asserts that the issue is moot because the eighteen-month period expired during the pendency of this appeal.

Some state courts have held that a request for an injunction is moot when the underlying agreement has expired by its own terms. *See Professional Business Servs., Inc. v. Gustafson*, 285 Or. 307, 310, 590 P.2d 729, 730 (1979). Similarly, the Washington Court of Appeals has held that injunctive relief is "inappropriate and manifestly unfair" when the restrictive covenants have expired by their own terms. *Alexander & Alexander, Inc. v. Wohlman*, 19 Wash.App. 670, 688, 578 P.2d 530, 540 (1978). The court concluded that money damages would be the appropriate remedy. *Id.*

The Seventh Circuit is in accord with the above cases in their holdings of mootness. However, their reasoning is based upon constitutional grounds:

Because this appeal was heard more than eleven weeks after the end-date of the injunction, we raised the threshold issue of mootness. Article III of the Constitution requires that federal courts only decide disputes that present a "Case or Controversy." Because the preliminary injunction Brown appealed from expired under its own terms, the issues decided by the trial court pertaining to the propriety of a preliminary injunction have "lost ... [their] character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law."

*Henco, Inc. v. Brown*, 904 F.2d 11, 13 (7th Cir.1990) (quoting *Hall v. Beals*, 396 U.S. 45, 48, 90 S.Ct. 200, 201–02, 24 L.Ed.2d 214, 218 (1969)).

However, the Tenth Circuit has held that under their plenary power and an inherent power to do equity, prospective injunctive

relief may be appropriate. *Kodekey Electronics, Inc. v. Mechanex Corp.*, 500 F.2d 110, 112–13 (10th Cir.1974). The *Kodekey* court further added that if prospective relief were not granted, the employer would "in effect be deprived of the benefit of the non-competition agreement because of the stays sought ... and granted to postpone the effect of the original injunction." *Id.* at 112.

The Supreme Court of Virginia enjoined a former employee of a corporation under a noncompetition agreement for the time specified even though the time period in the covenant had run, because the employee had successfully opposed the injunction. *Roanoke Eng'g Sales Co. v. Rosenbaum*, 223 Va. 548, 290 S.E.2d 882, 886 (Va.1982). Similarly, in a Florida case, an injunction under a noncompetition agreement was held to run from the order date following remand, not from the date of termination, because the trial court did not provide the full period of injunction. *Orkin Exterminating Co. v. Bailey*, 550 So.2d 563, 564–65 (Fla.Ct.App.1989).

A finding of mootness would in effect reward the breach of the noncompetition covenant, "encourage protracted litigation, and provide an incentive to dilatory tactics." *Rosenbaum*, 290 S.E.2d at 886. Moreover, this would also "render the judicial process impotent to redress" the reward for a breach, "simply by forcing the other party to go through lengthy litigation to obtain relief." *Id.*

Although there is ample legal authority to grant prospective injunctive relief, we hold that such relief would be of little or no value to Kasco in the instant case. The main purpose of an injunction is to preserve the status quo. That purpose was defeated by the trial court's refusal to grant injunctive relief against Connie, Robert, and Tri–B–Supply early on. They were able to do for Larry Benson what he could not do for himself, i.e., solicit Kasco's customers to become customers of Tri–B–Supply. Although this court enjoined Larry, Connie, Robert, and Tri–B–Supply from *further* soliciting or accepting business from Kasco customers pending determina-

tion of this appeal, by that time (August 14, 1990), nearly eighteen months had expired since Benson terminated employment with Kasco. Connie and Robert had been free during all of that time to erode Kasco's customer base. Since it appears unlikely that any benefit would now accrue to Kasco by extending the injunction for another six months, we decline to do so. Kasco's damage claim is pending in the trial court. Damages can now be determined with reasonable certainty at this point in the litigation. Therefore, Kasco's claim for prospective injunctive relief is denied.

## LEAVE TO AMEND COMPLAINT

■ Finally, Kasco seeks relief from the trial court's denial of leave to amend its complaint to add Robert as a defendant and to assert claims against him and additional claims against Larry and Connie Benson. The standard of review of a denial to amend pleadings is abuse of discretion. *Cheney v. Rucker*, 14 Utah 2d 205, 211, 381 P.2d 86, 91 (1963). Rule 15(a) of the Utah Rules of Civil Procedure states in part that leave to amend "shall be freely given when justice so requires." We have held, "A primary consideration that a trial judge must take into account in determining whether leave should be granted is whether the opposing side would be put to unavoidable prejudice by having an issue adjudicated for which he had not had time to prepare." *Bekins Bar V Ranch v. Huth*, 664 P.2d 455, 464 (Utah 1983).

The record does not disclose why leave to amend was not granted. Defendants advance no argument that they would be prejudiced by the addition of issues. It may have been that the trial court thought Robert could not be enjoined because privity of contract was lacking. However, we have held earlier in this opinion that in proper instances, privity is not necessary for injunctive relief. Defendants now suggest that the amendments sought were properly denied because they were futile and offered in bad faith. *See Christiansen v. Utah Transit Auth.*, 649 P.2d 42, 47 (Utah 1982). We cannot say that Kasco's attempt to seek relief against Robert was

futile. Likewise, we find no indication of bad faith. We thus conclude that it was an abuse of discretion to deny Kasco's motion to amend.

The case is remanded to the trial court for further proceedings consistent with this opinion. The injunction heretofore entered by this court is dissolved.

HALL, C.J., and ZIMMERMAN, J., concur.

STEWART, Justice (dissenting):

I dissent. First, Kasco's appeal was untimely, and this Court is without jurisdiction. Second, this appeal is moot because the eighteen-month injunction period has long ago expired, even from the time of Benson's termination of employment and under the most liberal policy for extending that period. Third, assuming that the merits of the appeal are properly before the Court, I submit that the majority errs in ruling that the trial court made adequate findings under *Robbins v. Finlay*, 645 P.2d 623 (Utah 1982), in support of the injunction. In any event, the requirements of *Finlay* were not met. In my view, the majority opinion eviscerates *Finlay* and, in effect, allows noncompetition agreements to be enforced in virtually any case involving salespersons competing against former employers.

I

We granted Kasco's petition for an interlocutory appeal pursuant to Rule 5 of the Utah Rules of Appellate Procedure. Under that rule, a petition for an interlocutory appeal must be filed within twenty days from the entry of the order appealed from. Kasco filed its petition for interlocutory appeal from the trial court's denial on May 9, 1990, of Kasco's motion to modify a preliminary injunction. The preliminary injunction had been entered previously on April 10, 1989. The petition for interlocutory appeal was filed May 29, 1990, within twenty days of the denial of the motion to modify, but over one year after the entry of the injunction. The timeliness of the petition for interlocutory appeal turns on whether the petition should have been filed within twenty days of the entry of the injunction or within twenty days of the denial of the motion to modify.

One of Kasco's contentions on the merits of this appeal is that the trial court erred in ruling that the eighteen-month injunction enforcing the noncompetition covenant should have run from March 1, 1989, when Larry Benson was terminated, not from August 1988 when, arguably, there was an anticipatory breach of the covenant by Benson. That, however, was one of the issues the trial court adjudicated on April 10, 1989, when the injunction was first entered. Kasco failed to file a petition for interlocutory appeal within twenty days of that order. Instead, it waited for nearly a year to file its motion to modify the preliminary injunction in which it reargued the exact issue, together with other issues unrelated to this basic issue. When Kasco lost, it petitioned for interlocutory review of the denial of the motion to modify. But re-raising the issue of when the injunction should begin to run was not really a modification issue all, as the majority blithely assumes. That issue had been ruled on when the injunction was issued.

Kasco's strategy should not be allowed to succeed. Motions to reconsider cannot extend the time for filing an appeal, *Peay v. Peay*, 607 P.2d 841, 843 (Utah 1980), unless they can be deemed motions for a new trial, *Watkiss & Campbell v. FOA & Son*, 808 P.2d 1061, 1064–65 (Utah 1991). In considering the motion to modify, the trial court did not treat it as a motion for a new trial.

Even if Kasco's motion could be deemed a motion for new trial, it was not filed within ten days of the trial court's order as required by Utah Rule of Civil Procedure 59(e). Nor was it the equivalent of any other motion that might extend the time for filing a notice of appeal. *See* Utah R.App.P. 4(b); *Watkiss & Campbell*, 808 P.2d at 1065 & n. 11.

Kasco asserts that its petition was timely filed because a trial court has the prerogative, either on its own motion or on application of a party, to correct an order at any

time if entered by "mistake, inadvertence, surprise, or excusable neglect, as provided by Rule 60(b), U.R.C.P," and cites as support *Rees v. Albertson's, Inc.*, 587 P.2d 130 (Utah 1978). However, Kasco has never contended that it filed a motion under Rule 60(b) of the Utah Rules of Civil Procedure, and, in any event, the motion to modify was not filed within three months of entry of the order, as required by Rule 60(b)(7).

Kasco also argues that because this Court granted the petition for an interlocutory appeal, the jurisdictional issue must be deemed to have been decided. That is not the case. Petitions for interlocutory appeal are disposed of on the papers in a summary fashion. The jurisdictional question, although referred to in those papers, has not heretofore been squarely presented. It is now properly before the Court.

The majority simply concludes that because a preliminary injunction "by its very nature" is subject to modification, Kasco's appeal from denial of its motion to modify is timely. *Supra* at 88. The unfortunate result of the majority's position is that a party may now use a motion to modify an injunction as a means to extend indefinitely the time to file an out-of-time petition for interlocutory appeal of the grant of a motion for a preliminary injunction and thereby subvert the time limitation in Rule 5 of the Utah Rules of Appellate Procedure.[1]

## II

On the merits, the majority holds that Kasco is entitled to an injunction against Larry D. Benson, his wife Connie A. Benson, and their son Robert Benson and that under Larry Benson's employment contract, the eighteen-month noncompetition injunction should run from the date Benson terminated his employment, rather than from the date that Kasco was put on notice of Benson's intent not to comply with the covenant not to compete.

To obtain injunctive relief under Utah Rule of Civil Procedure 65A(e), the movant must by argument and evidence convince the trial court that the requirements have been met. *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 425 (Utah 1983). When the instant case was adjudicated, Rule 65A(e) provided that an injunction may be granted on the following bases:

(1) when it appears by the pleading on file that a party is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act complained of, either for a limited period or perpetually;

(2) when it appears from the pleadings or by affidavit that the commission or continuance of some act during the litigation would produce great or irreparable injury to the party seeking injunctive relief;

(3) when it appears during the litigation that either party is doing or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party respecting the subject matter of the action, and tending to render the judgment ineffectual;

(4) in all other cases where an injunction would be proper in equity.

Thus, Kasco had to show that it was entitled to the relief it demanded.

Speaking to the validity of the trial court's determination that an injunction was warranted, the majority holds that all the requirements for issuing the injunction were met. That simply is not the case. The majority ignores a fundamental and blatantly obvious defect in the trial court's findings. The majority asserts that "the [trial] court determined that Kasco had also met the requirements of *Robbins v. Finlay*, 645 P.2d 623, 627–28 (Utah 1982)...." *Supra* at 87–88. The majority is flatly wrong.

In a general discussion of relevant legal principles, the trial court did refer to *Finlay*. In making its findings in support of

---

**1.** Clearly, the terms of an injunction may be modified after it goes into effect. However, the law is that a movant must first show some change in circumstances. Kasco has not alleged any changed circumstances that bear upon the issue of when the injunction should have commenced.

the injunction, however, the trial court made no findings whatsoever pertaining to the standards established in *Finlay*. The trial court simply found that the covenant not to compete was enforceable as a matter of black-letter contract law, that the covenant was necessary to protect the goodwill of the business, and that the restrictions of the covenant were reasonable as to time and area:

> They being number one, that the covenant must be supported by consideration. That requirement is met.
>
> Number two, that no bad faith be shown in the negotiations of the contract. I believe, likewise, even though some did not wish to sign the contract under the circumstances of its presentation, that requirement also was met.
>
> Number three, the covenant be necessary to protect the goodwill of the business and, number four, that it be reasonable in its restrictions in terms of time and area. I believe each of those requirements is met in this contract and thus the preliminary injunction will be granted.

The injunction was patently unlawful on the face of this record because the trial court failed to make the essential finding under *Finlay* that Benson was not engaged in a common calling and that Kasco had a legally protectible interest. Before I discuss *Finlay*, however, a second point must be made.

The majority opinion states, "We have previously held that ' "a covenant not to compete is necessary for the protection of the goodwill of the business when it is shown that although the employee learns no trade secrets, he may likely draw away customers from his former employer, if he were permitted to compete nearby." ' " *Supra* at 87 (quoting *System Concepts, Inc. v. Dixon*, 669 P.2d 421, 426 (Utah 1983) (quoting *Allen v. Rose Park Pharmacy*, 120 Utah 608, 617, 237 P.2d 823, 827–28 (1951))). The majority's quotation from *Rose Park* is overly selective and ignores the subsequent modification of the

1951 *Rose Park* holding. Indeed, in the very next paragraph in *System Concepts*, this Court stated:

> Under the *Rose Park* reasoning, this goodwill alone would be considered a protectible interest which SCI could justifiably secure through a restrictive covenant. More recently, however, this Court has held that to justify enforcement of a restrictive employment covenant by injunctive relief the employer must show not only goodwill, but that the services rendered by the employee were special, unique or extraordinary.

669 P.2d at 426 (citing *Robbins v. Finlay*, 645 P.2d 623, 627–28 (Utah 1982)). In truth, the covenant in the instant case does nothing more than baldly restrain competition, which it may not do. *See Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 398 N.Y.S.2d 1004, 1006, 369 N.E.2d 4, 6 (1977). The point the majority misses is that any competition with a former employer will always have an effect upon that employer's goodwill, if goodwill is defined in terms of gross sales. On that view, all covenants not to compete seek to protect an employer's goodwill, no matter how common the calling in which the employee is engaged. Under the majority's rule, therefore, virtually every covenant not to compete is enforceable, irrespective of how oppressive the restriction is on the employee's freedom to contract and work.

*Robbins v. Finlay*, 645 P.2d 623 (Utah 1982), constituted a major modification of the rule laid down in *Rose Park*.[2] *Finlay* recognized that employees who engage in common callings have property interests in their labor and the right to pursue a chosen occupation for the benefit of themselves and their dependents. Such employees necessarily learn some aspects of their employer's business which would enable them to compete in selling products or services of the type sold by the employer. An employee's acquisition of general knowledge or expertise and its use on behalf of a competitor after the employee leaves the first

---

**2.** In *Rose Park*, the employee enjoined was a professional person solely responsible for building the business of a small neighborhood pharmacy.

employer, however, does not represent unfair, unethical, or improper conduct. Indeed, the acquisition of knowledge and ability is the natural and inevitable by-product of pursuing one's chosen occupation. It may be that an employee first learns an occupation by performing the duties of his employment. But even that does not vest the employer with any interest in the employee's knowledge, labor, or expertise. This has long been the protection the common law has accorded individuals engaged in common callings. It would be highly exploitive of persons engaged in common callings, such as salespersons, to allow an employer to restrain them from earning a livelihood simply because, in some degree or another, the goodwill of the employer tends to rub off onto employees or because some degree of employer goodwill was created by the employees in the course of discharging their duties. The law does not allow that. *Finlay*, 645 P.2d at 627.

Thus, *Finlay* stands for the proposition that employers may not use covenants not to compete to prevent competition from former employees who engaged in common callings, such as selling, even if the employee can compete more effectively because of their employment. *See also Reed, Roberts Assocs., Inc. v. Strauman*, 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d 590 (1976); *Amex Distributing Co. v. Mascari*, 150 Ariz. 510, 724 P.2d 596 (Ct.App. 1986).

The right to earn a living by engaging in a common calling is a fundamental right which the law must jealously protect. In *Finlay*, on facts somewhat similar to the instant case, we stated:

> The record shows that Finlay's job required little training and is not unlike the job of many other types of salesmen.

> The company's investment in training him was small. In fact, he had previously worked as a Beltone salesman for other dealers in Canada. Furthermore, there is no showing that his services were special, unique, or extraordinary, even if their value to his employer was

high. Thus, this case is similar to *Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.*, 42 N.Y.2d 496, 398 N.Y.S.2d 1004, 369 N.E.2d 4 (1977) where the court stated:

> It is clear that [the covenant's] broad-sweeping language is unrestrained by any limitations keyed to uniqueness [of the employee's services], trade secrets, confidentiality or even competitive unfairness. It does no more than baldly restrain competition. This it may not do. [*Id.*, 398 N.Y.S.2d at 1006, 369 N.E.2d at 6.]

> It is of no moment that defendant may have been especially proficient in his work. General knowledge or expertise acquired through employment in a common calling cannot be appropriated as a trade secret. "The efficiency and skills which an employee develops through his work belong to him and not to his former employer." *Hallmark Personnel of Texas, Inc. v. Franks*, Tex.Civ.App. 562 S.W.2d 933, 936 (1978). The same principles apply to the covenant here. We hold that the covenant not to compete had the effect of preventing the defendant from exploiting skills and experience which he had a right to exploit.

*Finlay*, 645 P.2d at 628 (footnote omitted).

The trial court and the majority ignore the fundamental policy on which *Finlay* rested. If the trial court had correctly applied *Finlay* to the facts of this case, Kasco could not have made the requisite showing under Rule 65A(e)(1) that it was entitled to the relief demanded. *Finlay* requires that before a trial court can conclude that a covenant not to compete is enforceable, it must first determine that the employee was not engaged in a common calling *and* that the employer has a legally protectible interest. *Finlay*, 645 P.2d at 627. A generalized assertion that preventing the completion of a former employee will protect the employer's goodwill is not enough. *Id.* at 627–28; *System Concepts*, 669 P.2d at 426.

In this case, defendant Larry Benson was a salesman of butcher supplies. He was a route salesman, pure and simple. He covered a rural territory in Utah and Idaho. He had no trade secrets. He was

not involved in management. As a result of his common calling, he necessarily knew both the actual and potential customers for the goods he sold in the communities of his territory. Customers of butcher supplies in such areas are not hard to find; a scan of local telephone books would quickly identify them. Finally, Kasco's customers are not found on a secret customer list.

The majority does not even address the issue of whether Benson was engaged in a common calling. It rests solely on the specious rationale that in his territory, Benson was Kasco. Route salespersons are commonly viewed in their territories as representatives of their employers. But that is no reason to hold them in semi-bondage to their former employers when they change jobs. The majority notes that Benson was one of Kasco's top five salespersons. The law, however, does not protect only less able individuals.

The consequence of the majority's ruling is that a noncompetition covenant may be enforced against any route salesperson whenever it could be said that the employer may lose some sales, i.e., "goodwill," if the former employee is not restrained from competing. That, of course, can be said with respect to all route salespersons, no matter how common their callings.

DURHAM, J., concurs in the dissenting opinion of STEWART, J.