**H. LeRoy COBABE, Plaintiff and Appellant,**

v.

**Garth STANGER and Edward Stanger, Defendants and Appellees.**

No. 910090.

Supreme Court of Utah.

Dec. 4, 1992.

---

Carolyn Montgomery, Salt Lake City, for plaintiff and appellant.

William T. Thurman and Joel T. Marker, Salt Lake City, for defendants and appellees.

HALL, Chief Justice:

H. LeRoy Cobabe appeals the decision of the Fifth Judicial District Court of Washington County, Utah, granting summary judgment to defendants Garth and Edward Stanger and denying Cobabe's motion for summary judgment. We reverse.

The parties presented the following undisputed facts in support of their cross-motions for summary judgment. On April 26, 1988, Cobabe and the Stangers entered into a consulting agreement (the "Agreement") wherein Cobabe agreed to act as consultant for the Stangers for their purchase of a Toyota dealership. The Stangers agreed to pay Cobabe $4,000 per month, plus certain "balloon" payments, in exchange for his consulting services. Both parties abided by the terms of the Agreement through the month of October 1989. On October 15, 1989, Celia Snow, a judgment creditor of Cobabe's from another lawsuit, served the Stangers with a writ of garnishment seeking all money they owed to Cobabe. After receiving notice of the writ of garnishment, Cobabe filed a chapter 7 bankruptcy petition on November 1, 1989, and a bankruptcy trustee was appointed. The bankruptcy trustee did not assume the Agreement.

After receiving the writ of garnishment, the Stangers refused to make the November 1 payment to Cobabe or to make any further monthly payments under the Agreement. On December 14, 1989, Cobabe filed a motion in bankruptcy court for a determination of the validity of the writ of garnishment. After a hearing that the Stangers did not attend, the bankruptcy court, on January 5, 1990, found the garnishment invalid because it sought to garnish post-petition earnings and ordered the Stangers to pay Cobabe all post-petition earnings under the Agreement.

The Stangers still refused to pay Cobabe. On January 17, 1990, Cobabe filed a motion in the bankruptcy court for an order to show cause why the Stangers should not be held in contempt for failing to pay him according to the court's January 5 order. On February 1, the court held a hearing on the order to show cause and entered an order requiring the Stangers to pay Cobabe $20,000 in overdue payments under the Agreement, plus $300 in attorney fees, within twenty-four hours or face contempt charges. The Stangers paid Cobabe as required by the court order.

Thereafter, on stipulation of the parties, the bankruptcy court vacated its order so that a state court could determine the validity of the Agreement. On April 23, 1990, Cobabe filed the complaint in this action, seeking enforcement of the Agreement and payment of moneys past due under it. The Stangers counterclaimed, seeking repayment of the $20,300 paid under order from the bankruptcy court.

On October 18, 1990, the district court heard cross-motions for summary judgment. On November 2, 1990, the court entered a memorandum decision awarding summary judgment to the Stangers, dismissing Cobabe's complaint, and ordering repayment of the $20,300 awarded by the bankruptcy court. On January 24, 1991, the court entered judgment on its memorandum decision. Cobabe then filed this appeal.

Summary judgment is proper in cases where there is no genuine issue of material fact and the moving party is enti-

tled to judgment as a matter of law.[1] On appeal, we accord no deference to the trial court's conclusions of law, but review them for correctness.[2]

On appeal, this court must determine the effect of bankruptcy upon the rights and obligations of the parties to an executory contract for personal services. Specifically, the issue for this court is whether the bankruptcy code (the "Code") requires that the trustee's rejection of Cobabe's executory contract with the Stangers terminates the contract, extinguishing all rights and obligations of the parties as of the date Cobabe filed bankruptcy. Determination of the issue requires an interpretation of 11 U.S.C. § 365.[3]

■ The debtor's filing bankruptcy creates a bankruptcy estate, comprised (with certain exceptions) of all the debtor's property and interests in property.[4] This estate is administered by a fiduciary representative, the "trustee," [5] and is considered a separate legal entity from the debtor.[6] Under the Code, the debtor's property automatically passes to the estate to be governed by the trustee.[7] However, section 365 of the Code creates an exception to the rule that a debtor's property automatically passes to the estate.[8] Under section 365, executory contracts do not automatically vest in the estate, but enter it only upon assumption by the trustee.[9]

■ In general, the trustee has the power to assume or reject all executory contracts of the debtor. However, section 365(c) places certain limitations upon a trustee's power to assume executory personal services contracts.[10] The reason for this provision is that under the common law concept, personal services contracts are not assignable and the other party to such a contract cannot be required to accept the personal services of a substitute.

Cobabe's Agreement is one for personal services, which would reasonably entitle

1. Utah R. Civ.P. 56(c); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1039 (Utah 1991).

2. *Clover,* 808 P.2d at 1040.

3. Section 365 reads in relevant part:
> (a) ... [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
> ....
> (c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—
> (1)(A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and
> (B) such party does not consent to such assumption or assignment;
> ....
> (d)(1) In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60-day period, fixes, then such contract or lease is deemed rejected.
> ....

> (g) ... [T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
> (1) if such contract or lease has not been assumed under this section ..., immediately before the date of the filing of the petition....

4. 11 U.S.C. § 541(a).

5. *See* 11 U.S.C. § 323(a).

6. *See* 11 U.S.C. §§ 541(a) ("The commencement of a case ... creates an estate."), 349(b)(3) (dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case"); Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection",* 59 U.Colo.L.Rev. 845, 851–52 (1988) [hereinafter Andrew].

7. 11 U.S.C. § 541(a); *see also In re Lovitt,* 757 F.2d 1035, 1040–41 (9th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 145, 88 L.Ed.2d 120 (1985).

8. *See Lovitt,* 757 F.2d at 1040–41; *In re Tonry,* 724 F.2d 467, 469 (5th Cir.1984); *In re Cochise College Park, Inc.,* 703 F.2d 1339, 1352 (9th Cir. 1983); *In re Noonan,* 17 B.R. 793, 797 (Bankr. S.D.N.Y.1982); 2 *Collier on Bankruptcy,* ¶ 365.-01[1] (15th ed.1988).

9. *Lovitt,* 757 F.2d at 1041; *Tonry,* 724 F.2d at 469; *Cochise College Park,* 703 F.2d at 1352; *Noonan,* 17 B.R. at 797; 2 *Collier on Bankruptcy,* ¶ 365.03; Andrew at 860–63 & n. 76.

10. *See* 11 U.S.C. § 365(c).

the Stangers to reject performance from anyone other than Cobabe. The recitals to the Agreement stated that it was based on Cobabe's "extensive experience in the area of buying and selling automobiles, as well as operating and managing a dealership." Cobabe's performance under the Agreement was to consist of "consulting and advisory services on behalf of Stanger with respect to all matters relating to or affecting Stanger's acquisition of a Dealer Agreement with Toyota and Stanger's operation of a car dealership in St. George."

■■■ Additionally, because the contract was one for personal services, Cobabe's performance could not be assumed by the trustee without the Stangers' consent.[11] To assume a debtor's contract, the trustee must be able to "stand in the shoes of" the debtor. Assumption is not possible in a personal services contract unless the nondebtor party is willing to accept the trustee's services in place of the contracted-for services of the debtor.[12]

■■ We hold that a trustee's rejection of an executory contract does not, without more, terminate a personal services contract that the debtor is otherwise ready, willing, and able to perform.[13] As a result, such a contract continues unaffected by bankruptcy, because the rights and obligations of both parties are governed before and after bankruptcy by applicable state law. Therefore, the trial court erred in granting summary judgment.

The Stangers' argument that the lack of assumption constitutes a rejection, a breach, and a termination of an executory personal services contract is without merit. Cobabe has not breached the contract, either before or after filing bankruptcy, but instead has been ready, willing, and able to perform at all times. Therefore, the Stangers must provide a defense for their own nonperformance.

Our holding accords with the history and purpose of the Bankruptcy Act.[14] Congress could not have intended the inequities that would result if we were to allow the nondebtor party to a personal services contract to abandon it or terminate it merely because the debtor party filed bankruptcy. The purpose of our bankruptcy law is to give the debtor a fresh start.[15] This fresh start will be aided, not hindered, by the debtor's continued employment or rendering personal services for pay. The trial court's order granting summary judgment to the Stangers was therefore erroneous.

We next examine Cobabe's claim that the trial court erred in denying his motion for summary judgment against the Stangers. Cobabe sought summary judgment against the Stangers for breach of contract, stating that their refusal to pay him under the terms of the Agreement constituted a breach for which he is entitled to damages. The Stangers did not dispute the fact that they made no payments under the Agreement after October 1, 1989. Nor did they dispute that Cobabe was ready, willing, and able to perform the Agreement. The Stangers did, however, allege that Cobabe did not perform any services under the Agreement after November 1, 1989. We must therefore determine whether, given the uncontroverted facts presented to the trial court, the Stangers breached the contract as a matter of law.

■■■ Cobabe claims that the Stangers' refusal to pay him the November 1 payment and all payments thereafter con-

---

11. *See In re Carrere,* 64 B.R. 156, 159 (Bankr. C.D.Cal.1986) ("[Section] 365 ... does not apply to a personal services contract in a bankruptcy case under chapter 7."); *Tonry,* 724 F.2d at 469 (personal services contracts cannot be assumed by the chapter 7 trustee in bankruptcy).

12. 11 U.S.C. § 365(c)(1)(A).

13. Our decision is not to be read as precluding the application of the doctrine we adopt today in other than personal services contracts. The facts of this case do not present that issue.

14. *Noonan,* 17 B.R. at 800 (citing H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 125 (1977), U.S.Code & Admin.News 1978, 5787, 5963 [hereinafter House Reports]); *see also Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Watson v. Merrill,* 136 F. 359, 363 (8th Cir.1905).

15. *Noonan,* 17 B.R. at 800; House Reports at 125.

stituted a breach of the Agreement. A party's refusal to perform under the terms of an agreement constitutes a breach of that agreement.[16] "It is well settled that an action may be maintained for breach of contract based upon the anticipatory repudiation by one of the parties to the contract." [17] An anticipatory breach occurs when a party to an executory contract manifests a positive and unequivocal intent not to render its promised performance.[18] The undisputed facts show that the Stangers refused to pay Cobabe under the terms of the Agreement, although Cobabe was ready, willing, and able to perform and had not otherwise breached the Agreement. Therefore, the trial court erred in denying Cobabe's motion for summary judgment. The issue of damages due Cobabe was not raised on appeal and is therefore properly left for further proceedings in the trial court.

Reversed and remanded for proceedings consistent with this opinion.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

**16.** See *Kasco Servs. Corp. v. Benson,* 831 P.2d 86, 89 (Utah 1992); *University Club v. Invesco Holding Corp.,* 29 Utah 2d 1, 504 P.2d 29, 30 (1972); *Hurwitz v. David K. Richards Co.,* 20 Utah 2d 232, 436 P.2d 794, 796 (1968); *Fleming v. Fleming-Felt Co.,* 7 Utah 2d 293, 323 P.2d 712, 716 (1958).

**17.** *Breuer–Harrison Inc. v. Combe,* 799 P.2d 716, 723 (Utah Ct.App.1990); *see also Kasco Servs.,* 831 P.2d at 89; *Hurwitz,* 436 P.2d at 796.

**18.** *Kasco Servs.,* 831 P.2d at 89. Where there is an anticipatory repudiation, three options are available to the nonbreaching party:
1. Treat the entire contract as broken and sue for damages.
2. Treat the contract as still binding and wait until the time arrive[s] for its performance and at such time bring an action on the contract.
3. Rescind the contract and sue for money paid or for the value of the services or property furnished.
*Hurwitz,* 436 P.2d at 796.